**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW JERSEY CARPENTERS HEATLH FUND, NEW JERSEY CARPENTERS VACATION FUND and BOILERMAKER BLACKSMITH NATIONAL PENSION TRUST, *on Behalf of Themselves and All Others Similarly Situated,*<br><br>    Plaintiffs,<br><br>   *v.*<br><br>RESIDENTIAL CAPITAL, LLC, RESIDENTIAL FUNDING, LLC, RESIDENTIAL ACCREDITED LOANS, INC., BRUCE J. PARADIS, KENNETH M. DUNCAN, DAVEE L. OLSON, RALPH T. FLEES, LISA R. LUNDSTEN, JAMES G. JONES, DAVID M. BRICKER, JAMES N. YOUNG, RESIDENTIAL FUNDING SECURITIES CORPORATION d/b/a GMAC RFC SECURITIES, GOLDMAN, SACHS & CO., RBS SECURITIES, INC. f/k/a GREENWICH CAPITAL MARKETS, INC. d/b/a RBS GREENWICH CAPITAL, DEUTSCHE BANK SECURITIES, INC., CITIGROUP GLOBAL MARKETS, INC., CREDIT SUISSE SECURITIES (USA) LLC, BANK OF AMERICA CORPORATION *as successor-in-interest to* MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., UBS SECURITIES, LLC, JPMORGAN CHASE, INC. *as successor-in-interest to* BEAR, STEARNS & CO., INC. and MORGAN STANLEY & CO., INC.,<br><br>    Defendants. | Case No.: 08-CV-8781 (HB)<br><br><br><br>**ECF CASE** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**THE RALI DEFENDANTS' MOTION TO DISMISS**
**THE AMENDED SECURITIES CLASS ACTION COMPLAINT**

      **COHEN MILSTEIN SELLERS & TOLL PLLC**

     Joel P. Laitman (JL-8177)
     Christopher Lometti (CL-9124)
     Daniel B. Rehns (DR-5506)
     Kenneth M. Rehns (KR-9822)
    150 East 52nd Street, Thirtieth Floor
    New York, New York 10022
    (212) 828-7797
    (212) 828-7745 (Facsimile)

     Steven J. Toll (admitted pro hac vice)
     S. Douglas Bunch (SB-3028)
    1100 New York Avenue NW, Suite 500 West
    Washington, D.C. 20005
    (202) 408-4600
    (202) 408-4699 (Facsimile)

    *Attorneys for Plaintiff and the Class*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

SUMMARY OF THE FACTS ................................................................................................. 2

ARGUMENT ................................................................................................................... 5

I.    PLAINTIFFS ADEQUATELY ALLEGE
      STANDING TO ASSERT THEIR CLAIMS ........................................................... 5

II.   THE COMPLAINT SATISFIES THE PLEADING STANDARDS OF
      RULES 8(a) AND 12 OF THE FEDERAL RULES OF CIVIL PROCEDURE ............ 6

      A.    The Legal Standards ........................................................................... 6

      B.    Plaintiff States Claims Under Sections 11 and
            12(a)(2) of the 1933 Act Against the RALI Defendants ............................ 7

            1.    Factual Allegations Support the Inference That
                  the Guidelines Were Systematically Disregarded .......................... 8

            2.    Factual Allegations Support the Inference
                  of Credit Support Misstatements and Omissions .......................... 10

            3.    Factual Allegations Support the Inference of
                  Misstatements and Omissions Regarding Conflicts
                  of Interest and Ratings Shopping Practices ................................ 10

      C.    Plaintiff States Claims under Section 15 of the 1933 Act ......................... 10

III.  PLAINTIFFS' SECTION 11 AND 12(a)(2) CLAIMS DO NOT
      SOUND IN FRAUD AND ARE NOT SUBJECT TO RULE 9(b) ............................ 12

IV.   THE COMPLAINT ALLEGES ACTIONABLE
      MISREPRESENTATIONS AND OMISSIONS ................................................... 14

      A.    The Complaint Adequately Alleges Claims against
            the RALI Defendants regarding Ratings Agencies' Failures ...................... 14

      B.    Risk Disclosures Do Not Cure Underwriting Guideline
            Misstatements and Omissions .............................................................. 17

      C.    The Offering Documents Contain Material Omissions
            about Delinquencies as of the Cut-Off Dates .......................................... 21

      D.    The Offering Documents Included Material Misstatements
            And Omissions Regarding Credit Support ............................................... 22

      E.    The Prospectus Supplements Misstated the
            Loan-to-Value Ratios Associated with the Underlying Mortgages ............... 23

V.      PLAINTIFFS STATE VIABLE CLAIMS UNDER SECTION 15....................................23

VI.     NEITHER RESIDENTIAL CAPITAL NOR RESIDENTIAL
        FUNDING SHOULD BE DISMISSED FROM THIS ACTION....................................24

VII.    PLAINTIFF'S CLAIMS ARE NOT TIME BARRED......................................................25

**CONCLUSION**.........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
    556 U.S. ___, 129 S. Ct. 1937 (2009)............................................................................6, 7, 20

*Connett v. Justus Enters. of Kansas*,
    68 F.3d 382 (10th Cir. 1995) ...................................................................................................15

*Foman v. Davis*,
    371 U.S. 178 (1962).................................................................................................................25

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983)...................................................................................................................2

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004).....................................................................................................5, 6

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
    936 F.2d 759 (2d Cir. 1991)......................................................................................................8

*In re AMF Bowling Sec. Litig.*,
    Civ. No. 99-3023 (DC), 2003 U.S. Dist. LEXIS 7389 (S.D.N.Y. May 2, 2003) ...................25

*In re CIT Group, Inc. Secs. Litig.*,
    349 F. Supp. 2d 685 (S.D.N.Y. 2004).....................................................................................13

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) .................................................................................2, 6

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    618 F. Supp. 2d 3ll (S.D.N.Y. 2009) .......................................................................8, 16, 18

*In re Fuwei Films Sec. Litig.*,
    No. 07-cv-9416 (RJS), 2009 U.S. Dist. LEXIS 59658 (S.D.N.Y. Jul. 10, 2009).....................7

*In re Global Crossing, Ltd. Sec. Litig.*,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003).......................................................................................5

*In re Initial Pub. Offering*,
    214 F.R.D. 117 (S.D.N.Y. 2002) ..............................................................................................6

*In re Leadis Tech. Sec. Litig.*,
    Civ. No. 05-00882 (CDS), 2006 U.S. Dist. LEXIS 11152 (N.D. Cal. Mar. 1, 2006) .............13

*In re Merrill Lynch & Co., Sec., Derivative & ERISA Litig.*,
    Civ. No. 07-9633, slip op. (S.D.N.Y. Feb. 27, 2009) ............................................12

*In re Worldspace Sec. Litig.*,
    Civ. Civ. No. 07-2252, 2008 U.S. Dist. LEXIS 56224 (S.D.N.Y. Jul. 21, 2008) ............11, 24

*J&R Mktg., SEP, v. Gen. Motors Corp.*,
    549 F.3d 384 (6th Cir. 2008) .........................................................................15

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
    Civ. No. 07-0976 (LAP), 2008 U.S. Dist. LEXIS 76670 (S.D.N.Y. Sept. 30, 2008)..............13

*Olkey v. Hyperion 1999 Term Trust, Inc.*
    98 F.3d 2 (2d Cir. 1996)................................................................................8

*Randall v. Loftsgaarden*,
    478 U.S. 647 (1986).................................................................................2, 4

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)................................................................... *passim*

*Safron Capital Corp. v. Leadis Tech., Inc.*,
    274 Fed. Appx. 540 (9th Cir. 2008)..................................................................14

*Schoenhaut v. Am. Sensors, Inc.*,
    986 F. Supp. 785 (S.D.N.Y. 1997) ...................................................................16

*Scibelli v. Roth*,
    Civ. No. 98-7228 (HB), 2000 U.S. Dist. LEXIS 790 (S.D.N.Y. Jan. 31, 2000) ....................21

*Tooley v. Napolitano*,
    556 F.3d 836 (D.C. Cir. 2009) ....................................................................19, 23

## STATUTES

15 U.S.C. § 77 *et seq.*................................................................... *passim*

Securities Act of 1933, § 11............................................................................7, 10

Securities Act of 1933, § 12............................................................................7, 10

Securities Act of 1933, § 15................................................................................10

## OTHER AUTHORITIES

17 C.F.R. § 230.436(g) (2008)..........................................................................14

Fed. R. Civ. P. 15(a) ...................................................................................................25

U.S. Const. Art. III, § 2 ..............................................................................................6

## <u>RULES</u>

Rule 8(a) ........................................................................................................................6

Rule 12(b)(6) .................................................................................................................7

Rule 9(b) .................................................................................................................11, 13

## <u>SECONDARY AUTHORITY</u>

Disclosure of Security Ratings in Registration Statements, SEC Release Nos. 33-6336,
    34-18012, 46 Fed. Reg. 42024-01, 42025 (Aug. 18, 1981) .....................................14

## PRELIMINARY STATEMENT

Plaintiffs submit this memorandum of law in opposition to the motion made by defendants Residential Accredited Loans, Inc. ("RALI"), Residential Capital, LLC f/k/a Residential Capital Corporation ("RCC"), Residential Funding LLC ("RFC"), Residential Funding Securities Corporation d/b/a GMAC RFC Securities ("RFSC") (together "Residential Capital"), and Bruce Paradis, Davee L. Olsen, Kenneth M. Duncan, Ralph T. Flees, Lisa R. Lundsten, James G. Jones, David M. Bricker, and James N. Young (together, the "Individual Defendants") (collectively, the "RALI Defendants") pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' Amended Securities Class Action Complaint (the "Complaint").

This is an action brought pursuant to Sections 11, 12 and 15 of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. §§ 77k, 77l(a)(2) and 77o, by Court-appointed Lead Plaintiff New Jersey Carpenters Health Fund, Plaintiff New Jersey Carpenters Vacation Fund and Plaintiff Boilermaker Blacksmith National Pension Trust (together, "Plaintiffs"), on their own behalf and as a class action on behalf of all persons and entities who purchased or otherwise acquired interests in the Issuing Trusts pursuant or traceable to two Registration Statements and accompanying Prospectuses filed with the Securities and Exchange Commission ("SEC") by RALI on March 3, 2006 and April 3, 2007 (together, the "Registration Statements").

Defendants registered the securities at issue with the SEC, received the benefits of an SEC-registered offering and also were obliged to comply with the strict liability provisions of the federal securities laws, including the private rights of action provided for in the 1933 Act.

The Complaint asserts claims (1) pursuant to Section 11 of the 1933 Act against RALI, the Issuer of the Registration Statements, the Individual Defendants, as signatories of the Registration Statements, and the Underwriter Defendants, including RFSC,[1] (2) pursuant to

---

[1]    The Underwriter Defendants include RFSC, Goldman, Sachs & Co ("Goldman Sachs"), RBS Securities, Inc. ("RBS"), Detusche Bank Securities, Inc. ("Deutsche Bank"), Citigroup Global Markets, Inc. ("Citigroup"), Credit Suisse Securities (USA) LLC ("Credit Suisse"), Bank of America Corporation ("BofA") as successor-in-interest to Merrill Lynch, Pierce Fenner & Smith, Inc. ("Merrill Lynch"), UBS Securities, LLC ("UBS"), JP Morgan Chase, Inc. ("JP Morgan"), and Morgan Stanley & Co. Inc. ("Morgan Stanley").  RFSC has joined in the RALI Defendants Motion to Dismiss.  The remaining Underwriter Defendants have filed a separate Motion to Dismiss.

Section 12(a)(2) against the Underwriter Defendants, including RFSC, which promoted and sold the Certificates, and (3) pursuant to Section 15 against the Individual Defendants, as control persons of a primary violator under Section 11.  These 1933 Act claims impose "a harsh, nearly strict-liability rule designed to make sure those involved in securities offerings meticulously prepare the registration statement."  *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1170 n.47 (C.D. Cal. 2008).  As the Supreme Court noted, liability under the 1933 Act is "virtually absolute, even for innocent misstatements."  *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983) (citing 15 U.S.C. §77k(b)).  The 1933 Act imposes such high standards because it seeks "to prevent further exploitation of the public by sale of unsound, fraudulent, and worthless securities through misrepresentation [and] to place adequate and true information before the investor."  *Randall v. Loftsgaarden*, 478 U.S. 647, 659 (1986) (quoting S. Rep. No. 47, 73d Cong., at 1 (1st Sess. 1933)).  As set forth in the Complaint, Defendants violated the high standards of the 1933 Act.

## SUMMARY OF FACTS

Pursuant to the Registration Statements and Prospectus Supplements, the Underwriter Defendants, including RFSC, underwrote the issuance of $37.66 billion of RALI Mortgage Pass-Through Certificates issued in 59 Offerings within just over 16 months between March 28, 2006 and October 9, 2007.  ¶¶2, 5, 27-28.[2]  The Certificates were sold primarily to conservative institutional investors such as pension funds who were required to purchase only the highest investment-grade securities.  ¶7.  The Certificates were collateralized by residential mortgages, i.e., investors' interest and principal payments were derived from borrowers' payments on the underlying mortgages.  ¶¶5, 11.  The Registration Statements and Prospectus Supplements each contained specific sections describing the purported Underwriting Guidelines used to originate the mortgage collateral.  ¶¶ 10-11, 205-32.  The Guidelines provided that the originator was required to assess borrower creditworthiness through an examination and verification of borrower assets, credit history and employment, ¶¶205, 213, 217, 221, and the valuation of the

---

[2]    All references to "¶__" or "¶¶__" refer to the Plaintiffs' Amended Securities Class Action Complaint.

mortgaged property through standard appraisals, ¶¶207, 209, 225, 227. The Guidelines also provided that mortgage loans could be originated pursuant to limited or no supporting borrower documentation where there were countervailing or compensating factors justifying issuance of the loan, *e.g.,* strong credit profile or high appraisal value in relation to loan amount. ¶¶207, 215, 225, 247. It is alleged that these Guidelines contained material misstatements and omissions because, in fact, the Guidelines were systematically disregarded. ¶¶10, 205-232.

In July 2007, relatively soon after issuance and in the face of mounting delinquencies in the mortgage collateral, the Ratings Agencies announced the need to not merely potentially downgrade the Certificates and all similar MBS, but to revise the underlying ratings methodologies used to rate them to incorporate significantly higher anticipated default rates. ¶¶93-103. When these methodology changes were finally implemented, they resulted in downgrades in late 2007 and 2008 of as many as 23 levels within the 23-level rating system.[3] ¶¶71-72. Although initially S&P and Moody's had assigned their highest ratings to 95.8% and 95.6%, respectively, of the Certificates, S&P and Moody's have downgraded 100% of the classes of Certificates – over 98% to speculative "junk bond" investments. ¶¶8, 71-72. Further, delinquency and foreclosure rates continued to dramatically increase. ¶¶8, 66-70. Attendant to these significant downgrades and delinquencies was a commensurate collapse in Certificate value, with Plaintiff's holdings having lost 42% of their total initial value. ¶¶9, 19-20, 66-70.

When the Ratings Agencies announced the methodology changes, and the subsequent Certificate downgrades, they attributed, as a material cause, aggressive underwriting practices and impaired mortgage loan collateral. ¶¶70, 88-92. The Ratings Agencies' actions in July 2007 triggered governmental and other investigations.[4] ¶¶14, 88, 98-102, 105-09, 113-16, 121-24.

---

[3]    As a general matter, a rating downgrade of even one level is considered material to the financial condition of the rated entity or security. ¶72.

[4]    In March 2008, the Presidential Working Group (the "PWG") found "erosion of market discipline" in the underlying mortgage originations and in the MBS ratings. ¶88. In July 2008, the SEC concluded that S&P and Moody's had material undisclosed conflicts of interest in rating MBS, including (1) their role in structuring MBS and (2) their incentive not to update their models to reflect more aggressive mortgage loan products lest the models not yield the highest investment grade ratings. ¶¶113-16, 121-24. In October 2008, a former S&P managing director testified before a Congressional Committee about (1) the Ratings Agencies' failure to update their models to

The findings, which emerged in 2008, also supported the strong inference that the mortgage collateral was impaired from the outset and the AAA ratings consistently assigned to the Certificates were inflated and the product of undisclosed material conflicts of interest. (*Id.*)

The Complaint alleges violations of Sections 11, 12(a)(2) and 15 of the 1933 Act arising from three categories of material omissions that had not been disclosed in the Offering Documents: (1) the mortgage underwriting guidelines set forth in the Offering Documents were systematically disregarded, ¶¶205-32; (2) the credit support built into the Certificates' structure was inadequate and based on outdated models employed by the Ratings Agencies who had the incentive to inflate credit support and Certificate ratings, ¶¶13-15, 93-103, 113-21, 236-43; and (3) the Ratings Agencies activities in connection with the Certificates were infected by undisclosed conflicts of interest, including the Ratings Agencies' provision of *unpaid* services in creating and structuring the Certificates as an inducement for Residential Capital to hire them to rate the Certificates, ¶¶117-27, and Residential Capital's requirement that the Ratings Agencies submit to the "ratings shopping" process as a prerequisite for the engagement to rate the Certificates, ¶¶14, 65, 113-21.

These material omissions resulted in material misstatements in the specific portions of the Offering Documents that described: (1) the Guidelines purportedly used to originate mortgages because those Guidelines were systematically disregarded, ¶¶205-32; (2) information regarding delinquencies as of the cut-off date because the delinquency rates skyrocketed immediately following the Offering dates, ¶¶233-35; (3) the various forms of stated credit support because, having been derived from outdated Ratings Agencies; models, they were wholly inadequate, ¶¶236-43; (4) the true loan-to-value ratios associated with the underlying mortgages because inflated appraisals and misleading sales price figures were used to form the LTV ratios, ¶¶244-47; and (5) the Certificates' true investment ratings because they were based on outdated models, lowered ratings criteria, and inaccurate loan information, ¶¶248-54.

---

reflect the default rate of the loans being issued and (2) the ratings shopping practice employed by investment banks to engage the Ratings Agencies wherein the Ratings Agencies provided ratings as part of their competitive bid for the engagement which provided further incentive to assign inflated MBS ratings. ¶¶15, 65, 107-08, 115.

## ARGUMENT

## I.   PLAINTIFFS ADEQUATELY ALLEGE STANDING TO ASSERT THEIR CLAIMS.

The RALI Defendants assert that Plaintiffs do not have standing to bring suit on behalf of purchasers of the four Certificate Offerings issued pursuant to the Registration Statement because Plaintiff purchased Certificates in only one of the four Offerings and, as a matter of constitutional law, can only assert claims with respect to the Offering in which it purchased Certificates.   RALI Defendants' Memorandum of Law in Support of Motion to Dismiss ("RDM"), D.E. 43, Point I, at 6-7.  The RALI Defendants' assertion is not correct because any challenge to Lead Plaintiff's standing is premature.

Lead Plaintiff moved the District Court, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 77z, for an order appointing it Lead Plaintiff of this putative securities class action on behalf of all persons who acquired the Certificates pursuant and/or traceable to the Registration Statement at issue.   None of the Defendants opposed that motion, and the Court issued its order appointing New Jersey Carpenters Lead Plaintiff on February 22, 2009. *See* D.E. No. 22, Order Appointing Lead Plaintiff, Feb. 22, 2009.

A Lead Plaintiff is responsible for managing and directing the litigation.   15 U.S.C. § 78u-4(a)(3)(B).   "Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action."  *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004).  "Because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Id.*

The district court in *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 204-05 (S.D.N.Y. 2003), held:

> [N]othing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims that may be made on behalf of all of the potential classes and subclasses of holders of different categories of security at issue in the case. Indeed, the imposition of any such requirement would be at odds with the purposes of the statute, since in the case of large alleged frauds involving issuers of many classes of securities, the consequence would be either the appointment of

a large number of lead plaintiffs (undermining the goal of a cohesive leadership and management group) or the premature breakdown of the action into an unmanageable number of separate cases brought by different lead plaintiffs on behalf of each potential subclass of securities holders.

As a result, additional named plaintiffs are entitled to intervene prior to class certification in order to cure any potential deficiencies in class representation. *See, e.g., Hevesi*, 366 F.3d at 82-83 (affirming lead plaintiff's ability to add named plaintiffs to aid in representing the class where lead plaintiff did not have standing to bring every available claim); *In re Initial Pub. Offering,* 214 F.R.D. 117, 122-23 (S.D.N.Y. 2002) (granting leave to add new named plaintiffs for purpose of conferring standing prior to class certification).

The RALI Defendants' assertions regarding Lead Plaintiff's ability to represent a class of Certificate purchasers are premature and more appropriately addressed at the class certification stage. *See, e.g., Countrywide,* 588 F. Supp. 2d at 1167 ("The well-developed class certification framework will better guide this inquiry and lead to more efficient resolution of class claims than standing's sometimes-arbitrary distinctions."). As a result, they should be rejected.[5]

Defendants further argue that Plaintiffs lack standing to sue on 55 of the Offerings because each Offering involved a different underwriter and a different prospectus supplement. RDM, at 7. For the reasons set forth in Plaintiffs' Memorandum of Law in Opposition to the Underwriter Defendants Motion to Dismiss the Amended Securities Class Action Complaint, at 4-5, which is incorporated herein by reference, the RALI Defendants' argument is incorrect.[6]

---

[5]    Further, the Complaint alleges that Plaintiffs have standing to assert claims under Sections 11 and 12(a)(2) of the 1933 Act against Defendants. Standing under Sections 11 and 12(a)(2) clearly give Plaintiffs standing under Section 15 of the 1933 Act. As a result, the Complaint also adequately alleges Plaintiff's standing under Article III, which expressly refers to federal statutes as one basis for conferring subject matter jurisdiction on federal courts. *See* U.S. Const. Art. III, § 2 ("The judicial power shall extend to all cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties …"). *See also W.R. Huff Asset Management Co. v. Deloitte & Touche LLP,* 549 F.3d 100, 106-07 (2d. Cir. 2008) (while an investment manager that has not alleged it suffered an injury does not have Article III standing, a plaintiff that alleges an injury in fact, causation and redressability does. Here, Plaintiffs have alleged all three elements: an injury (loss in Certificate value) caused by common misrepresentations and omissions in the Registration Statements and Prospectus Supplements that can be remedied by an award of monetary damages.)

[6]    *See also* Declaration of Joel P. Laitman in Support of Plaintiffs Opposition to the Underwriter Defendants Motion to Dismiss (the "Laitman Decl."), dated September 18, 2009, filed simultaneously herewith. Even though the Complaint does not cite to each of the 59 Prospectus Supplements when identifying the alleged misstatements and omissions in the Prospectus Supplements, ¶¶221, 223, 225, 227, 229, 231, 234, 241, 244, these same statements appear identically in all 59 Prospectus Supplements.

## II.    THE COMPLAINT SATISFIES THE PLEADING STANDARDS OF RULES 8(a) AND 12 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

### A.    The Legal Standards.

Rule 8(a) requires that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  As the Supreme Court recently reaffirmed in *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009), "the pleading standard that Rule 8 announces 'does not require detailed factual allegations,'" though the pleading must offer more than just "a formulaic recitation of the elements of the causes of action."[7]  The *Iqbal* decision reaffirmed that "in order to survive a motion to dismiss [pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566, 570 (2007)).  The Supreme Court made clear that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct."  *Id.*  To satisfy this plausibility standard, a *probability* of entitlement to relief need *not* be shown; rather, a plaintiff must only show that more than the mere possibility of entitlement to relief has been pled.  *Id.* at 1949-50.  The application of this plausibility standard under Rule 12(b)(6) requires a "two prong" analysis: first isolating the factual allegations in the pleading and then determining whether, after accepting all these factual allegations as true, the complaint gives rises to a *reasonable inference* that defendants are liable for the alleged misconduct.  *Id.*

### B.    Plaintiff States Claims Under Sections 11 and 12(a)(2) of the 1933 Act Against the RALI Defendants.

Section 11 of the 1933 Act allows purchasers of a registered security to sue certain statutorily-enumerated parties involved in a registered offering when false or misleading

---

[7]    The *Iqbal* complaint was dismissed because it "amount[ed] to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim" against two high-level government officials. *Id.* at 1951.  The complaint failed to provide any fact content in support of the allegation that the two defendants engaged in the "purposeful discrimination" required for the asserted claim. Here, because the Sections 11, 12 and 15 require no pleading of fraud (including the elements of intent and reliance), the sufficiency of the pleading is based simply upon whether the factual allegations support a reasonable inference that there were material misstatements and omissions in the Offering Documents.

information is included in a registration statement. 15 U.S.C. § 77k(a). Section 12(a)(2) creates liability for any person who offers or sells a security by means of a prospectus or oral communication that includes a material misrepresentation or omission. 15 U.S.C. § 77l(a)(2). Thus, all that is required to give rise to a reasonable inference that the RALI Defendants are liable under Sections 11, 12(a)(2) and 15 are factual allegations indicating that the Offering Documents "contained an untrue statement of a material fact or omitted to state a material fact that was required to be stated therein or was necessary to make the statements therein not misleading." *See, e.g.*, *In re Fuwei Films Sec. Litig.*, No. 07-cv-9416 (RJS), 2009 U.S. Dist. LEXIS 59658, at *28-29 (S.D.N.Y. Jul. 10, 2009) (quoting *Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571, 578 (S.D.N.Y. 2007)).[8] The Complaint contains such factual allegations.

### 1. Factual Allegations Support the Inference That the Guidelines Were Systematically Disregarded.

**Certificate Delinquencies Linked to Underwriting:** The Complaint details that the Ratings Agencies not only downgraded the Certificates soon after issuance from predominately AAA bonds to predominately junk bonds ¶¶9, 71-72, but attributed the cause to defective mortgage origination practices, including questionable or misrepresented loan data and wide-scale loosened or "aggressive [mortgage loan] underwriting" ¶¶10, 91. The Ratings Agencies eventually were forced to revamp their entire "methodologies" for rating the Certificates and all other MBS – increasing the default assumptions used for assigning ratings to the Certificate mortgage collateral.[9] ¶¶88-92. The Ratings Agencies reiterated the link between defective

---

[8]    The Second Circuit has acknowledged that "fraud is not an elements or a requisite to" such a claim and that "a plaintiff need allege no more than negligence to proceed." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). Further, a violation "will be found when material facts have been omitted or presented in such a way as to obscure or distort their significance." *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 761 (2d Cir. 1991); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 618 F. Supp. 2d 3ll, 320 (S.D.N.Y. 2009). The test for determining whether the Offering Documents contain a material misstatement or omission is "whether the defendants' representations, taken together and in context, would have misled a reasonable investor," *Olkey v. Hyperion 1999 Term Trust, Inc.* 98 F.3d 2, 5 (2d Cir. 1996), or whether the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available, *Flag Telecom*, 618 F. Supp. 2d at 321.

[9]    In rating the Certificates, S&P and Moody's each used their own 23-level rating system (ranging from "AAA" to "D" for S&P and from "Aaa" to "C" for Moody's). As alleged, the downgrades to the Certificates was not merely by one or two levels (*e.g.*, from "AAA" to "AA" for S&P or from "Aaa" to "Aa2" for Moody's, but, rather, by as many as 23 levels – from "AAA" to "Ba1 or lower. ¶¶7, 9, 71-72.

underwriting and the Certificates when they downgraded the Certificates dramatically beginning in late 2007 and continuing through 2008.  ¶¶9, 71-72.

These origination practices only began to come to light in the MBS context in July 2007 when the ratings agencies sought to comprehend the basis for astronomical delinquency and foreclosure rates in Certificate and other similar MBS collateral.  ¶¶89-91.  Clearly, had the true defective underwriting practices been disclosed in the Offering Documents – which, of course, the Ratings Agencies necessarily reviewed – the Ratings Agencies would not have been required to make these announcements in July 2007 and the attendant fundamental methodology changes and Certificate downgrades in late 2007 and 2008.

**Post-Issuance Delinquency and Foreclosure Data:**  The Complaint provides data reflecting that, soon after issuance and regardless of when the issuances occurred, Certificate delinquency and foreclosure rates skyrocketed to levels which, on their face, support an inference that the collateral was impaired from the outset.  The Complaint details that (1) Certificate delinquency and default rates skyrocketed from 0% at the time of each Offering to, on average, 4.8% four months after completion of each Offering, (2) these rates increased by an average 56% over the four-month averages to 6.4% six months after completion of each Offering, and (3) as of the date of the filing of this Complaint 37% of the total mortgage loans were either delinquent or in foreclosure or repossession.  ¶8, 67-68.  Collateral foreclosure of this magnitude is quantitative evidence supporting the conclusion that the collateral was impaired from the outset.

**The Originators' Reckless Underwriting Practices:**  The Complaint details that disclosures emerged following Certificate issuance, principally in the form of news articles and actions, that HFN, the principal certificate Originator engaged in reckless mortgage origination practices.  ¶¶73-79.

**The NYAG Investigation and PWG Report:**  The Underwriter Defendants contracted with external firms such as Clayton and Bohan to determine whether the Underwriting Guidelines set forth in the Offering Documents were applied with respect to the Certificate

collateral.  Residential Capital was a noted client of Clayton and Bohan.  ¶¶12, 82.  However, as Bohan's President stated, firms directed that fewer loans be examined and disregarded evidence of non-compliant loans.  ¶87.  Indeed, in 2008, the NYAG announced an investigation into investment banks which included their rejection of evidence of non-compliant loans brought to their attention.  ¶¶80-87.  As Plaintiffs allege, there was a disincentive for Residential Capital to reject any loans because the loans, originated by RCC's subsidiary, were RCC's property.  ¶11.

### 2.    Factual Allegations Support the Inference of Credit Support Misstatements and Omissions.

The Complaint details that it was disclosed, after issuance of the Certificates, that S&P had not materially updated its models for determining credit support since 1999 and that Moody's had not done so since 2002.  ¶¶15, 93.  It is further alleged, as a result, that the models failed to properly assess default rates for subprime, Alt-A, ARM and Neg Am loans which only became widely used in or about 2004.  ¶¶15, 93-97.  Further, S&P former executive Frank Raiter testified that S&P had developed updated models but had failed to implement them until 2007, which resulted in faulty and inflated MBSA ratings by S&P during the period in which the Certificates were consistently rated AAA by S&P.  ¶¶98-101.  Finally, the 2008 SEC Report found that the Ratings Agencies were incentivized not to update their models so as to provide MBS investment banks with inflated and more profitable ratings.  ¶¶14, 65, 113, 121-24.  These facts support the reasonable inference that the stated credit support was inadequate and contained material misstatements and omissions.

### 3.    Factual Allegations Support the Inference of Misstatements and Omissions Regarding Conflicts of Interest and Ratings Shopping Practices.

The Complaint specifically details that the July 2008 SEC Report and October 2008 testimony before the House Oversight Committee described that S&P and Moody's engaged in ratings shopping as part of the ratings process and that this is one of the practices that incentivized the Ratings Agencies to inflate their ratings to obtain the lucrative MBS ratings engagements.  ¶¶14, 98-103, 106-09, 113, 115-16, 121-24.  Further, the Complaint details that

former Moody's executive Jerome Fons testified during the October 2008 House Oversight Committee Hearings that ratings shopping was a material cause of faulty MBS ratings by S&P when Moody's was assigning AAA ratings to the Certificates.  ¶¶107-08, 115.

    **C.**    <u>**Plaintiff States Claims under Section 15 of the 1933 Act.**</u>

Section 15 of the 1933 Act, extends liability created under Sections 11 and 12 to "[e]very person who, by or thought stock ownership, agency, or otherwise … controls any person liable under Sections 11 and 12.  15 U.S.C. § 77o.  As set forth in Point II.B., *supra*, the Complaint adequately alleges primary violations of Sections 11 and 12 against the Individual Defendants and RFSC, and Plaintiffs therefore state claims against them under Section 15 of the 1933 Act.

Plaintiffs allege that each Individual Defendant was an officer and/or a director of RALI, that each functioned as a director to the Issuing Trusts during the relevant time period and that each signed one or both of the Registration Statements.  ¶¶30-38.  Plaintiffs allege that Defendant RFSC acted as underwriter for 22 of the RALI Certificate Offerings and helped draft and disseminate the Offering Documents.  ¶40.  Plaintiffs also allege that each Individual Defendant and RFSC (1) participated and/or conspired with the remaining Defendants in the wrongful acts and course of conduct or otherwise caused the damages and injuries claimed in the Complaint and is responsible in some manner for the acts, occurrences and events alleged in the Complaint, ¶39; (2) had the power to influence, and exercised that power and influence, to cause RCC, RFC, RALI and the Issuing Trusts to engage in violations of the 1933 Act described in the Complaint, ¶¶288-89; (3) had the control, position and influence which made them privy to, and provided them with actual knowledge of, the material facts and omissions concealed from Plaintiffs and the other Class members, ¶290; (4) was a participant in the violations alleged in the Complaint, based upon having prepared, signed or authorized the signing of the Registration Statement and having otherwise participated in the consummation of the Offerings, ¶291; (5) was responsible for overseeing the formation and operation of the Issuing Trusts, including routing payments from borrowers to investors, ¶291; and (6) prepared, reviewed and/or caused the Registration Statement and Prospectus Supplements to be filed and disseminated, ¶292.

These facts establish claims against these Defendants under Section 15 of the 1933 Act. *See In re Worldspace Sec. Litig.*, Civ. Civ. No. 07-2252, 2008 U.S. Dist. LEXIS 56224, at *20-21 (S.D.N.Y. Jul. 21, 2008). The RALI Defendants' assertions to the contrary are without merit.

## III. PLAINTIFFS' SECTION 11 AND 12(a)(2) CLAIMS DO NOT SOUND IN FRAUD AND ARE NOT SUBJECT TO RULE 9(b)

Defendants assert that "[t]he complaint alleges that the defendants orchestrated a fraudulent scheme," and that Plaintiffs' allegations therefore sound in fraud and must comply with the particularity requirements of Rule 9(b). RDM, Point II, pages 8-9 and n.8. However, none of the Complaint paragraphs quoted by the RALI Defendants makes such an allegation, and that is because the Complaint does not make any such allegation. Indeed, the only paragraph, ¶216 quoted by the RALI Defendants (*see* RDM, page 8, n.8) that refers to fraud, alleges that "mortgage lenders throughout the country engaged in fraudulent activities in order to obtain mortgages for borrowers and the fees obtained as payment – HFN being no exception." HFN is not a defendant in this action. Other Complaint references similarly refer to HFN, ¶74, the appraisers, ¶210, or the Ratings Agencies, ¶¶104-10, none of which are defendants here.[10]

Further, the cases cited by the RALI Defendants are inapposite. In *Rombach,* 355 F.3d at 171, plaintiffs asserted Section 11 claims against all defendants, Section 12(a)(2) claims against the underwriter defendants, and Sections 10(b) and 20(a) fraud claims pursuant to the 1934 Act against the individual defendants. The Second Circuit affirmed the District Court's conclusion that plaintiffs' claims against the individual defendants, which included both 1933 Act negligence claims and 1934 Act fraud claims, sounded in fraud and were thus subject to Rule 9(b)'s the particularity requirement, while plaintiffs' claims against the underwriter defendants,

---

[10] The RALI Defendants reliance on *In re Merrill Lynch & Co., Sec., Derivative & ERISA Litig.*, Civ. No. 07-9633, slip op. at 2 (S.D.N.Y. Feb. 27, 2009), in which, according to the RALI Defendants, Judge Rakoff "rul[ed] that reference to FBI's mortgage fraud investigation and Massachusetts fraud investigation against Merrill Lynch made clear that Section 11 case 'sounded in fraud'" is misplaced. Plaintiffs in that action asserted both 1933 and 1934 Act claims against defendant Merrill Lynch, and the fraud investigations alleged in the complaint also were alleged against Merrill Lynch, not some other entity.

which included only 1933 Act negligence claims, sounded only in negligence. *Id.* at 171-72. Here, Plaintiffs have asserted only 1933 Act negligence claims and have made no allegations of fraud. And, the Complaint explicitly disavows any inference, allegation or claim of fraud. ¶3.

The RALI Defendants' reliance on *Ladmen Partners, Inc. v. Globalstar, Inc.*, Civ. No. 07-0976 (LAP), 2008 U.S. Dist. LEXIS 76670, at *31-32 (S.D.N.Y. Sept. 30, 2008), is similarly misplaced. There, the district court, relying on *In re Leadis Tech. Sec. Litig.*, Civ. No. 05-00882 (CDS), 2006 U.S. Dist. LEXIS 11152 (N.D. Cal. Mar. 1, 2006) (applying Rule 9(b) where only Section 11 and 12(a)(2) claims had been asserted), and *In re CIT Group, Inc. Secs. Litig.*, 349 F. Supp. 2d 685, 690 n.4 (S.D.N.Y. 2004),[11] provided that "a complaint may sound in fraud even where, as here, no fraud claims under the Exchange Act are asserted." At the time of the *Ladmen Partners* decision, *Leadis* already had been reversed by the Ninth Circuit:

> Fraud is not an essential element of the claims raised in the Complaint, and the Complaint neither specifically alleges fraud, nor does it allege facts that *necessarily* constitute fraud. *Section 11* does not require a plaintiff to allege or prove fraud, but even if fraud is not an essential element of such a claim, "the particularity requirements of *Rule 9(b)* … apply to claims brought under *Section 11* when … they are grounded in fraud." Where the allegations in a complaint do not use the word "fraud" to describe a defendant's actions, a complaint "sounds in fraud" or "is grounded in fraud" and *Rule 9(b)* nonetheless applies whenever a complaint relies entirely on a "unified course of fraudulent conduct." A complaint containing allegations that "neither mention[] the word "fraud," nor allege[] facts that would necessarily constitute "fraud" does not allege a unified course of fraudulent conduct.
>
> Here, the Complaint does not rely upon a unified course of fraudulent conduct. Indeed, Appellants do not allege a claim under *Section 10(b)* of the Securities Exchange Act – a claim that would require them to allege fraud. Nor do they allege facts in the complaint that necessarily constitute fraud. Accordingly, the allegations in the Complaint do not "sound in fraud," and we conclude that the

---

[11]    In *CIT Group*, Judge Sprizzo noted in a footnote that "[a]lthough this Court thinks that an allegation that defendants reported that loan loss reserves were adequate despite 'already knowing at the time of filing … that the Company did not have adequate reserves,' Compl. ¶28, unquestionably sounds in fraud and therefore implicates Rule 9(b), *this Court relies on other bases for dismissal of this action*." *Id*., at 690 n.4. Thus, Judge Sprizzo declined to hold that Rule 9(b) applied to a complaint alleging only 1933 Act claims.

Complaint is not properly subject to the heightened pleading requirements of *Rule 9(b)*.

*Safron Capital Corp. v. Leadis Tech., Inc.*, 274 Fed. Appx. 540, 540-541 (9th Cir. 2008) (citations omitted), *cert. dismissed sub nom.*, 129 S. Ct. 1545 (2009).

Plaintiffs' Complaint does not use the word fraud to describe Defendants' actions, does not specifically allege fraud; and does not allege facts that necessarily constitute fraud; nor does it rely entirely on a unified course of fraudulent conduct. Accordingly, Plaintiff's Section 11 and 12(a)(2) claims should not be subject to Rule 9(b).

## IV.    THE COMPLAINT ALLEGES ACTIONABLE MISREPRESENTATIONS AND OMISSIONS

### A.    The Complaint Adequately Alleges Claims against the RALI Defendants regarding Ratings Agencies' Failures.

The RALI Defendants set forth a litany of supposed reasons why Plaintiffs have not stated a claim based upon alleged failures in connection with the Ratings Agencies. RDM, Point III.A., pages 10-14. First, the RALI Defendants proffer the completely baseless assertion that the Complaint only identifies a single statement regarding misstatements or omissions in the Offering Documents in connection with the Ratings Agencies. However, as demonstrated in Points II.B.2 and 3, *supra*, Plaintiffs also allege valid claims for omissions in the Offering Documents with respect to risk disclosures regarding Ratings Agencies' pre-engagement structuring, ¶¶117-27, inadequate credit support based on outdated models, ¶¶93-103, 236-43, and Ratings Shopping Practices, ¶¶113-16. The RALI Defendants' assertions are baseless.

Second, the RALI Defendants assert that, pursuant to Rule 436(g), 17 C.F.R. § 230.436(g)(1), credit ratings are not part of the Registration Statements and they are opinions actionable only if the Complaint alleges that the speaker did not believe the opinion and opinion is not factually well grounded. RDM, Point III.A, at 11-12. Again, the RALI Defendants are mistaken. Rule 436(g) provides that the Rule 436(g) exemption relates solely to "the *security rating* assigned … by a nationally recognized rating organization," 17 C.F.R. § 230.436(g)

(2008), and is intended only to "exempt the *rating organization* from liability *as an expert* under Section 11 … for security ratings included in registration statements," Disclosure of Security Ratings in Registration Statements, SEC Release Nos. 33-6336, 34-18012, 46 Fed. Reg. 42024-01, 42025 (Aug. 18, 1981).  Plaintiff's allegations, with respect to credit ratings, are that the credit support built into the Certificates' structure was inadequate and based on outdated models employed by the Ratings Agencies who had the incentive to inflate credit support and Certificate ratings.  ¶¶93-103, 236-43.  Plaintiffs present valid claims.

Third, the RALI Defendants assert that the Complaint fails to allege that they were aware of the outdated models, relaxed criteria or Ratings Agencies' conflicts.  RDM, Point III.A, at 11-12.  Plaintiffs, however, are not required to allege that the RALI Defendants were aware of the Ratings Agencies' outdated models, relaxed criteria or conflicts of interest because neither Section 11 nor Section 12(a)(2) requires that Plaintiffs allege the scienter or reliance elements of a fraud cause of action.  *Rombach*, 355 F.3d at 169 n.4 (citing *Herman & MacLean*, 459 U.S. at 382).  As set forth in the Complaint, Defendants are strictly or negligently liable for the material misstatements and omissions under the 1933 Act.  ¶3.

Fourth, the RALI Defendants assert that Plaintiffs have not sufficiently alleged that the Ratings Agencies' models and assumptions would have been material to investors and such disclosure is not required by Regulation AB (§1120).  RDM, Point III.A, at 12.  As alleged, the Ratings Agencies' models and assumptions are material because, without the Ratings Agencies' highest investment grade rating, the Certificates could not be purchased by the Underwriter Defendants' principal potential clientele, institutional investors such as pension funds and insurance companies like Plaintiffs.[12]  ¶7.  Further, Regulation AB (§ 1120) does not limit which disclosures may be material; it merely requires that certain disclosures be included.

---

[12]    *Connett v. Justus Enters. of Kansas*, 68 F.3d 382 (10th Cir. 1995), is inapposite.  The court dismissed claims that defendants omitted from a bond offering disclosures relating to "adequate net working capital" because offering documents made clear that defendants were purchasing a struggling business worth much less than the purchase price).  In *J&R Mktg., SEP, v. Gen. Motors Corp.,* 549 F.3d 384, 393 (6th Cir. 2008), the court found that Regulation S-K (§ 303) did not require disclosure to the public and rating agencies of all information that could be used to assess the company's credit rating.  *J&R* did not address Regulation AB; nor did it involve MBS.

Fifth, the RALI Defendants assert that Plaintiffs' allegations regarding the subsequent Certificate downgrades is fraud by hindsight, that the Offering Documents cautioned investors that the Certificates might be downgraded, and that Supplements for certain 2007 Offerings also disclosed that the Ratings Agencies had downgraded or put on downgrade watch a significant number of MBS, particularly those backed by subprime and Alt-A mortgages originated in 2005 and 2006. RDM, Point III.A, at 12-13. The RALI Defendants' assertions are without merit[13] because Plaintiffs are not arguing that the ratings were misstated because they later turned out, as the result of outside forces, to be inaccurate. In fact, the Complaint clearly states that the misstatements and omissions concerning the ratings assigned to the Certificates are actionable because of undisclosed actions between and among the Defendants and the Ratings Agencies that led to grossly inaccurate ratings assigned to fit criteria that the Underwriter Defendants demanded of the Ratings Agencies. ¶¶8, 71-72. While a downgrade of even one level is significant, downgrades such as occurred here of up to 23 levels, from the highest rating to the lowest rating, are unprecedented. ¶72. The value of all of the Certificates collapsed in an unprecedented manner and to an unprecedented degree over a significant period of time. *Id.* This is not fraud by hindsight. Further, the alleged cautions in the Offering Documents cited by the RALI Defendants do not even begin to "match" the alleged misstatements and omissions so as to render them not actionable as a matter of law. "The requirement that the cautionary language match the specific risk is particularly important, considering that most, if not all, security offerings contain cautionary language." *Flag Telecom,* 618 F. Supp. 2d at 322. *See*, *infra*, at 17.

Sixth, the RALI Defendants assert that the Complaint does not contain specific allegations that the Ratings Agencies' practices about which Plaintiffs complain applied to the securities and ratings at issue, *i.e.*, that the Complaint does not allege that ratings shopping took

---

[13]    The district court in *Schoenhaut v. Am. Sensors, Inc.*, 986 F. Supp. 785, 790 (S.D.N.Y. 1997), the case cited by the RALI Defendants, defined "fraud by hindsight" as "the attempt to impose liability for unrealized economic predictions." The district court then addressed plaintiffs' alleged material misrepresentations and omissions, which included, e.g., the alleged failure to disclose competition in the CO detector market and optimistic statements regarding future performance, without reliance on the fraud by hindsight doctrine.

place in connection with the RALI Offerings or that any RALI Defendants were aware of those practices. RDM, Point III.A., at 13. The RALI Defendants' assertions are not accurate. The Complaint, both explicitly and implicitly alleges that the Ratings Agencies' practices took place in connection with the RALI Offerings. *See* ¶¶113-116, "The Offerings Documents Failed to Disclose Residential Capital's Ratings Shopping Practices"; ¶¶117-121, "The Offerings Documents Failed to Disclose the True Roles of Ratings Agencies in Forming and Structuring the Certificates for Sale as Primarily AAA Securities"; and ¶¶122-127, "The Offering Documents Failed to Disclose Material Financial Conflicts of Interest Between Residential Capital and the Ratings Agencies". Further, Plaintiffs are not required to allege the RALI Defendants' awareness of the Ratings Agencies' practices because neither Section 11 nor Section 12(a)(2) requires that Plaintiffs allege the scienter or reliance elements of a fraud cause of action. *Rombach*, 355 F.3d at 169, n.4 (citing *Herman & MacLean*, 459 U.S. at 382).

Finally, the RALI Defendants assert that failure to disclose the Ratings Agencies' fee structure conflict is not actionable because these facts were well known to investors through the January 2003 SEC Report on the Role and Function of Credit Rating Agencies in the Operation of the Securities Markets. RDM, Point III.A., at 13-14. The RALI Defendants' reference to the 2003 SEC Report is misplaced. That Report described only potential conflicts of interest. It did not address actual activities and conflicts that existed in MBS ratings. Further, that Report does not mention either ratings shopping or the practice of providing free structuring direction as a further inducement of engagement.

### B.    Risk Disclosures Do Not Cure Underwriting Guideline Misstatements and Omissions.

The RALI Defendants assert that there were no material misstatements and omissions relating to the mortgage loan Underwriting Guidelines because the alleged misstatements and omissions – including presumably the core omission that the stated Guidelines were systematically disregarded – were disclosed in the Offering Documents. RDM, Point III.B., at 14-21. This argument fails. As an initial matter, the RALI Defendants must satisfy a high

burden to demonstrate that the misstatements and omissions are immaterial as a matter of law. As Judge Conner recently wrote, it is because "risk factors" have become ubiquitous in securities offering documents that:

> Under the "Bespeaks Caution" doctrine, "[c]ertain alleged misrepresentations in a stock offering are immaterial as a matter of law because it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002); *DeMaria v. Andersen*, 318 F.3d 170, 182 (2d Cir. 2003); *Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571, 579 (S.D.N.Y. 2007). The cautionary language must be specific, prominent and must directly address the risk that plaintiffs claim was not disclosed. *Olkey*, 98 F.3d at 5-6. The requirement that the cautionary language match the specific risk is particularly important, considering that most, if not all, security offerings contain cautionary language. *Miller*, 473 F. Supp. 2d at 579.

*Flag Telecom,* 618 F. Supp. 2d at 322. Not one single risk disclosure to which the RALI Defendants point meets this standard.

**Limited and No Documentation Programs:** The RALI Defendants assert that the Offerings Documents disclosed that under the limited and no documentation programs the Originator did not verify or performed only a limited review of borrower income, that the Prospectus Supplements disclosed that income verification was the exception, and the types of mortgages and their characteristics. RDM, Point III.B.1., at 15-16. The RALI Defendants' assertions miss the point. The Complaint alleges that the Guidelines provided that mortgage loans could be originated pursuant to limited or no supporting borrower documentation where there were compensating factors justifying loan issuance, *e.g.,* strong credit profile or high appraisal value in relation to loan amount. ¶¶207, 215, 225, 247. Tthe Complaint also alleges that the Guidelines were systematically disregarded because, *e.g.*, loans for borrowers with bad credit were continuously approved. ¶¶215-16. Plaintiffs state valid claims.

**Appraisals:** The RALI Defendants assert that Plaintiffs' allegations regarding appraisal disclosures in the Offering Documents are deficient because "Plaintiffs have failed to allege that any of the challenged statements was false," and that Plaintiffs have "failed to identify any facts that they contend should have been disclosed … about the appraisals." RDM, Point III.B.2., at 16-17. These assertions are baseless. The Complaint alleges that the Guidelines provided that

the originators assessed borrower creditworthiness by valuing the mortgaged property using standard appraisals, that the appraiser or an agent on its behalf was required to personally inspect the property and verify that the property was in good condition and that any new construction had been substantially completed, and that the appraisal "currently supports and is anticipated to support in the future the outstanding loan balance." ¶¶207, 209, 225, 227. The Complaint also alleges that these Guidelines were systematically disregarded because appraisers were pressured to appraise at certain levels or else they would not be hired again, so purportedly independent appraisals were not prepared in conformance with stated appraisal standards. ¶¶226, 228. Plaintiffs state valid claims.

The RALI Defendants also assert that Plaintiffs have not quantified the impact of the flawed appraisals on the loan data provided to investors. RDM, Point III.B.2., at 17. The RALI Defendants disregard that this is a motion on the pleadings and improperly seek to have Plaintiffs prove their claims at this stage of the litigation. *See Tooley v. Napolitano*, 556 F.3d 836, 839 (D.C. Cir. 2009) ("*Twombly* leaves the longstanding fundamentals of notice pleading intact."). Plaintiffs have properly alleged the materiality of the stated misrepresentations and omissions.

**RFC Review:** Citing to Paragraphs 229, 211-12 and 217-18 of the Complaint, the RALI Defendants assert that the Offering Documents disclosed RFC's review of underwriting information, that Plaintiffs' allegation that Defendants "lack[ed] an incentive" to perform "any substantial review" is not actionable, and that Plaintiffs do not allege that the RALI Defendants were aware of any flaws in RFC's review. RDM, Point III.B.3., at 17-19. The RALI Defendants' assertions miss the point. Plaintiffs allege that the disclosures were misleading because RFC and HFN "were more concerned with 'pushing loans through' and increasing fees and profits from MBS securitizations than kicking-back loans to correspondent lenders," ¶212, and that, as a result, "Residential Capital's need for non-conforming mortgage loans in a competitive market caused it to forego any substantial review [of] the validity of mortgage loan applications and borrower information," ¶¶218, 230. Further, the RALI Defendants' awareness of alleged flaws in RFC's review is not an element of a Section 11 or 12(a)(2) claim. *Rombach*,

355 F.3d at 169 n.4 (neither Section 11 nor Section 12(a)(2) requires that Plaintiffs allege the scienter or reliance elements of a fraud cause of action) (citing *Herman & MacLean* 459 U.S. at 382).[14]

**Exceptions to Underwriting Guidelines:**  The RALI Defendants assert that Plaintiffs' allege (¶232) that RFC approved loans even when the loan was not in substantial compliance with its guidelines, that Plaintiffs have not pleaded supporting facts or facts demonstrating Defendants' awareness of such practices, and that Regulation AB only requires disclosure to the extent known of underwriting criteria changes.  RDM, Point III.B.4., at 19-20.  Defendants' assertion fails, however, because Section 1111 of Regulation AB imposes a duty to describe the "underwriting criteria" including circumstances where they may be overridden, and the Complaint challenges not merely the failure to disclose particular exceptions, but the entire affirmative description contained in the Guidelines, including the exception process itself, *i.e.*, that exceptions to standard underwriting would only occur where there were compensating factors such as strong borrower credit history.  The Complaint alleges not merely the failure to disclose certain exceptions, but also that all of the stated Guidelines were systematically disregarded as reflected by the massive rating downgrades, delinquencies and foreclosures, and subsequent disclosures regarding the reckless practices of the principal originators.[15]

---

[14]      With respect to Clayton Holdings, Inc. ("Clayton") and The Bohan Group ("Bohan"), the RALI Defendants assert that Plaintiffs "do not plead any facts to indicate that Bohan or Clayton were actually engaged to review any portion of the mortgages underlying the Certificates."  RDM, Point III.B.3., at 18.  Plaintiffs, however, specifically allege that "Residential Capital farmed out most of the 'review' of the mortgage loan collateral to third-party firms, including Bohan and Clayton, which have publicly disclosed the severe deficiencies in the standards applied in underwriting and securitizing mortgage loan collateral throughout the relevant time period."  ¶212.  The RALI Defendants also assert that the Complaint "does not identify any facts to suggest that defendants were aware of any flaws in these firms' review at the time of any of the Offerings."  RDM, Point III.B.3., at 18-19. At this stage of the litigation, however, Plaintiffs must allege "factual allegations," not facts, which need not be "detailed" but must offer more than just "a formulaic recitation of the elements of the causes of action."  *Iqbal*, 556 U.S. ___, 129 S. Ct. at 1949.  Moreover, the RALI Defendants' awareness of alleged flaws in the review of the mortgage loan collateral is not an element of a Section 11 or 12(a)(2) claim.  *Rombach*, 355 F.3d at 169 n.4 (neither Section 11 nor Section 12(a)(2) requires that Plaintiffs allege the scienter or reliance elements of a fraud cause of action) (citing *Herman & MacLean*, 459 U.S. at 382).  Plaintiffs properly allege that the Underwriter Defendants' due diligence regarding Residential Capital and HFN's compliance with loan underwriting guidelines described in the Prospectus Supplements was deficient.  ¶¶80-87.

[15]      The RALI Defendants also point out that Plaintiffs omitted the last sentence of the quoted paragraph from page S-58 of the RALI 2006-QO7 Prospectus Supplement (highlighted below) from Complaint ¶231:

**HFN:**  The RALI Defendants assert that Plaintiffs' allegations regarding the FTC's mid-2008 investigation into alleged discriminatory practices and other settlements over HFN's fee charges have nothing to do with this case.   RDM, Point III.B.5., at 20-21.   The RALI Defendants' assertions miss the point.  Of course, Plaintiffs do not allege that the HFN loans that were the subject of the FTC investigation are the same loans at issue in this action.  However, as alleged in the Complaint, the FTC investigation "focused on whether the underwriting risk and the credit characteristics of the borrowers" for the loans that the FTC was investigating, "justified the reported disparities in loan price," ¶75, and supports the inference that HFN systematically disregarded its underwriting guidelines regardless of which loans were at issue.[16]

### C.     The Offering Documents Contain Material Omissions about Delinquencies as of the Cut-Off Dates.

The RALI Defendants assert that the delinquency rates were not misleading when made; that later increases do not infer that the RALI Defendants knew of the increases at the time of the

---

The applicable underwriting standards include a set of specific criteria by which the underwriting evaluation is made.  However, the application of the underwriting standards does not imply that each specific criterion was satisfied individually.  Rather, a mortgage loan will be  considered to  be originated in accordance with the underwriting standards described above if, based on an overall qualitative evaluation, the loan is in substantial compliance with the underwriting standards.  **For example, a mortgage loan may be considered to comply with the underwriting standards described above, even if one or more specific criteria included in the underwriting standards were not satisfied, if other factors positively compensated for the criteria that were not satisfied.**

The RALI Defendants are correct.  Plaintiffs inadvertently omitted the last sentence of the quoted paragraph. However, the District Court may take judicial notice of that sentence, which only serves to further explain Plaintiffs' allegations regarding omissions from the Prospectus Supplement, alleged in the subsequent ¶232 that:

*Omitted Information:*  Exceptions to guidelines were granted in many circumstances – not just where compensating factors existed or substantial compliance was satisfied.  The exceptions were granted when the borrower could not qualify for a mortgage loan.  A substantial portion of the loans originated pursuant to the HFN/RFC Program underwriting guidelines were approved and submitted by mortgage brokers and correspondent lenders throughout the country.  Thereafter, as sets forth above, the loans would be evaluated using a computerized system which could not exercise any degree of realistic control over the truthfulness of the borrower information contained in mortgage applications.

In other words, Plaintiff alleges that the Guidelines were systematically disregarded because, among other things, exceptions were routinely granted where the borrower could not qualify for the loan that he obtained because there were no compensating factors or substantial compliance with underwriting guidelines.

[16]     As a result, whether the RALI Defendants were aware of HFN's alleged discriminatory practices at the time of any of the Offerings, RDM at 20, is not relevant and the RALI Defendants' reliance on *Scibelli v. Roth*, Civ. No. 98-7228 (HB), 2000 U.S. Dist. LEXIS 790 (S.D.N.Y. Jan. 31, 2000), is misplaced.

Offerings; and that the Offering Documents disclosed the risk of future delinquencies.  RDM, Point III.C., at 21-22.  Plaintiff's claims, however, are that the delinquency rates skyrocketed immediately after each Offering supporting the inference of fundamentally impaired loans which only could have occurred as a result of systematic failures to abide by the Underwriting Guidelines and inadequate due diligence in monitoring compliance with those Guidelines.  ¶¶8, 66-70, 233-35; see also Point II.B.1., *supra*, at 9 regarding post-issuance delinquency and foreclosure data.  In addition, neither Section 11 nor Section 12(a)(2) requires that Plaintiffs allege the scienter or reliance elements of a fraud cause of action.)  *Rombach*, 355 F.3d at 169 n.4 (citing *Herman & MacLean*, 459 U.S. at 382).  Further, the general risk disclosure to which the RALI Defendants refer, that "[d]elinquencies and losses with respect to residential mortgage loans generally have increased in recent months, and may continue to increase," is neither specific nor prominent, does not directly address the risk that Plaintiffs' claim was not disclosed, and does not implicate the Bespeaks Caution Doctrine.  *See*, Point III, *supra,* at 19.  As a result, the RALI Defendants' assertions lack merit.

### D.    The Offering Documents Included Material Misstatements and Omissions Regarding Credit Support.

Citing to one paragraph in the Complaint (¶93), the RALI Defendants assert simply that Plaintiffs allege that the "amount and kind of credit support was "insufficient and understated." RDM, Point III.D., at 22.  That, however, fails to acknowledge that the Complaint also details how the Offering Documents failed to disclose that Residential Capital and the Underwriter Defendants relied on the Ratings Agencies outdated models to determine levels of credit support and ratings and how these faulty credit support determinations were then used by the Ratings Agencies to assign inflated and faulty AAA ratings to a substantial portion of the total Certificate value to the Offerings, ¶¶93-103, leading to obvious material misstatements and omissions regarding credit support in the Offering Documents, also detailed in the Complaint, ¶¶236-43.

The RALI Defendants then assert that (1) the Offering Documents disclosed that the amount of credit support would be capped and that it might not be sufficient, and (2) Plaintiffs do

not allege that any Trust failed to make a required distribution and therefore fail to set forth a plausible basis for inferring that the Offering Documents contained misstatements regarding credit support. RDM, Point III.D., at 22-23. The RALI Defendants' assertions are not correct and also miss the point. First, the supposed cautionary language, the two statements referred to by the RALI Defendants contained in the general Risk Disclosures section of the RALI Series 2006-Q09 Trust Prospectus that the amount of credit support would be capped and might not be sufficient, is neither specific nor prominent, and does not directly address the risk that Plaintiffs claim was not disclosed. *See*, *supra*, Point IV.B., at 12-13. Second, whether a Trust has failed to make a required distribution is irrelevant, given the collapse in Certificate value with Plaintiff's holdings having lost 42% of their total initial value. ¶¶9, 19-20, 66-70.

### E. The Prospectus Supplements Misstated the Loan-to-Value Ratios Associated with the Underlying Mortgages.

Plaintiffs allege that the Prospectus Supplements misstated the true loan-to-value ("LTV") ratios associated with the underlying mortgages and detail how those LTV ratios which were set out in each Prospectus Supplement were misstated and did not accurately reflect the true value of the properties. ¶¶244-46. Rather than focus on these alleged misrepresentations and omissions, the RALI Defendants assert that Plaintiffs needed to – but did not – allege information specific to LTV ratio misstatements in each of the 59 Prospectus Supplements and identify which specific range of LTV ratios in the Prospectus Supplements reflected inaccurate loan or value data. RDM, Point III.E., at 23-14. The RALI Defendants disregard that this is a motion on the pleadings and improperly seek to have Plaintiffs prove their claims at this stage of the litigation. *See* Tooley, 556 F.3d at 839 (D.C. Cir. 2009) ("*Twombly* leaves the longstanding fundamentals of notice pleading intact."). Plaintiffs have properly alleged the materiality of the stated misrepresentations and omissions at this stage of the litigation.

## V. PLAINTIFFS STATE VIABLE CLAIMS UNDER SECTION 15

The RALI Defendants assert that Plaintiffs' Section 15 control person claims against them fail because Plaintiffs' Section 11 and 12 claims fail and, in the absence of an underlying

primary violation of the 1933 Act, Plaintiffs' Section 15 claims cannot stand.  RDM, Point IV, page 24.  As set forth in Point I,B, *supra*, Plaintiffs have adequately pled claims against the RALI Defendants for violations of Section 11 and 12 of the 1933 Act.  Accordingly, the RALI Defendants' motion to dismiss on this basis should be denied.  *See Worldspace Sec. Litig.*, 2008 U.S. Dist. LEXIS 56224, at *20-21.

## VI.    NEITHER RESIDENTIAL CAPITAL NOR RESIDENTIAL FUNDING SHOULD BE DISMISSED FROM THIS ACTION.

The RALI Defendants assert that Residential Capital, LLC ("RCC") and Residential Funding, LLC ("RFC") should be dismissed because the Complaint does not assert claims against them and they are not alleged to have had any role in preparing the Offering Documents or selling the Certificates or to have been Section 15 control persons.  RDM, Point V, at 24.  The Complaint alleges that Plaintiffs seek redress against Defendant RCC, the parent Company of Defendants RAL1I and RFC, ¶¶4, 23, that RCC originated or acquired all underlying mortgage collateral for the various Offerings via the Sponsor, RFC, ¶¶23, 56-65.

The Complaint alleges that Plaintiffs seek redress against Defendant RFC, ¶4,that Defendant RFC acted as the Sponsor for the Certificates issued pursuant to the Registration Statements and made certain representations and warranties in connection with the loan pools collateralizing the Certificates, ¶24, 56-65.  The Complaint alleges that Residential Capital, defined to include RCC and RFC, ¶4, engaged in ratings shopping which resulted in 96% of the Certificates being assigned the highest AAA designation by the Ratings Agencies.  Further, because Defendant RCC is sued as the parent company of Defendants RALI and RFC, claims against RALI and RFC are claims against RCC.  Thus, Plaintiffs state valid claims against Defendants RCC and RFC.  In any event, should the Court find Plaintiffs' claims against Defendants RCC and/or RFC insufficient, Plaintiffs are prepared – and request the Court to allow them – to amend their Complaint accordingly.

## VII.    PLAINTIFF'S CLAIMS ARE NOT TIME BARRED.

The RALI Defendants incorporate by reference the arguments set forth in Part II.B of the Underwriters Brief and assert that (1) Plaintiffs had inquiry notice of their claims before September 22, 2007, one year prior to the filing of the original complaint, or (2) plaintiffs' claims against Residential Capital, LLC and Residential Funding, LLC, neither of which was sued in the original complaint, and those claims in the amended complaint relating to the 46 offerings that were not mentioned in the original complaint should be dismissed as time-barred because Plaintiffs had notice of their claims before May 18, 2008.  RDM, Point VI., at 24-25.

For the reasons set forth in Point II of Plaintiffs' Memorandum of Law in Opposition to the Underwriter Defendants' Motion to Dismiss the First Amended Complaint, Plaintiff was not on inquiry notice of its claims against the RALI Defendants before either September 22, 2007 or May 18, 2008, and the RALI Defendants' motion to dismiss should be denied.

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint should be denied in its entirety.[17]

---

[17]    Should the Court dismiss all or part of Plaintiff's allegations, Plaintiff requests leave to replead.  Fed. R. Civ. P. 15(a) (leave to amend shall be granted freely); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re AMF Bowling Sec. Litig.*, Civ. No. 99-3023 (DC), 2003 U.S. Dist. LEXIS 7389, at *5 (S.D.N.Y. May 2, 2003) ("the only possible reasons to reject amendment would be prejudice to the defendant or misconduct by plaintiffs…").

Dated: New York, New York
September 18, 2009

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By: ____/s/ Joel P. Laitman_____
Joel P. Laitman (JL-8177)
Christopher Lometti (CL-9124)
Daniel B. Rehns (DR-5506)
Kenneth M. Rehns (KR-9822)
150 East 52nd Street, Thirtieth Floor
New York, New York 10022
(212) 828-7797
(212) 828-7745 (Facsimile)
*jlaitman@cohenmilstein.com*
*clometti@cohenmilstein.com*
*drehns@cohenmilstein.com*
*krehns@cohenmilstein.com*

Steven J. Toll (admitted *pro hac vice*)
S. Douglas Bunch (SB-3028)
1100 New York Avenue NW, Suite 500 West
Washington, D.C. 20005
(202) 408-4600
(202) 408-4699 (Facsimile)
*stoll@cohenmilstein.com*
*dbunch@cohenmilstein.com*

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I, Kenneth M. Rehns, hereby certify that, on September 18, 2009, I caused the foregoing document to be filed electronically with the United States District Court for the Southern District of New York through the Court's mandated ECF service. Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the documents upon confirmation of e-filing.

/s/   Kenneth M. Rehns
Kenneth M. Rehns