UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
:
NEW JERSEY CARPENTERS HEALTH FUND, NEW JERSEY :
CARPENTERS VACATION FUND and BOILERMAKER :
BLACKSMITH NATIONAL PENSION TRUST, *on Behalf of* :
*Themselves and All Others Similarly Situated*, :
:
                                Plaintiffs, :
:
                            - against - :
: 08-CV-8781 (HB)
RESIDENTIAL CAPITAL, LLC, RESIDENTIAL FUNDING, :
LLC, RESIDENTIAL ACCREDITED LOANS, INC., BRUCE J. :
PARADIS, KENNETH M. DUNCAN, DAVEE L. OLSON, : **ECF CASE**
RALPH T. FLEES, LISA R. LUNDSTEN, JAMES G. JONES, :
DAVID M. BRICKER, JAMES N. YOUNG, RESIDENTIAL :
FUNDING SECURITIES CORPORATION d/b/a GMAC RFC :
SECURITIES, GOLDMAN, SACHS & CO., RBS SECURITIES, :
INC. f/k/a GREENWICH CAPITAL MARKETS, INC. d/b/a :
RBS GREENWICH CAPITAL, DEUTSCHE BANK :
SECURITIES, INC., CITIGROUP GLOBAL MARKETS, INC., :
CREDIT SUISSE SECURITIES (USA) LLC, BANK OF :
AMERICA CORPORATION *as successor-in-interest to* :
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., UBS :
SECURITIES, LLC, JP MORGAN CHASE, INC. *as successor-* :
*in-interest to* BEAR, STEARNS & CO., INC., and MORGAN :
STANLEY & CO. INCORPORATED, :
:
                                 Defendants. :
:
--------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
UNDERWRITER DEFENDANTS' MOTION TO DISMISS THE
<u>CONSOLIDATED FIRST AMENDED SECURITIES CLASS ACTION COMPLAINT</u>**

                                            FRIED, FRANK, HARRIS, SHRIVER
                                             && JACOBSON LLP
                                             William G. McGuinness
                                             Stephanie Goldstein
                                             Shahzeb Lari
                                             One New York Plaza
                                             New York, New York 10004-1980
                                             (212) 859-8000

                                             *Attorneys for Underwriter Defendants*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................... ii

ARGUMENT .............................................................................................................................1

I.   PLAINTIFFS LACK STANDING ...................................................................................1

    A.   Plaintiffs Lack Standing with Respect to Fifty-Five of the Fifty-Nine Challenged Offerings ...................................................................1

    B.   Plaintiffs Lack Standing to Pursue Section 12(a)(2) Claims .............................4

II.  PLAINTIFFS' CLAIMS ARE TIME-BARRED .............................................................5

    A.   Plaintiffs Do Not Dispute That They Were on Inquiry Notice by May 18, 2008 .......................................................................................6

    B.   Plaintiffs Were on Inquiry Notice of Their Claims by September 22, 2007 .................................................................................................6

III. PLAINTIFFS' ALLEGATIONS DO NOT SATISFY RULE 9(b) OR 8(a) .................9

IV.  PLAINTIFFS' SECTION 15 CLAIM SHOULD BE DISMISSED ............................10

CONCLUSION .......................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**                                                                                                                  **PAGE(S)**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co Inc.*,
    2009 WL 2828018 (S.D.N.Y. Sept. 2, 2009) ................................................................................ 2

*APA Excelsior III L.P. v. Premiere Techs.*,
    476 F.3d 1261 (11th Cir. 2007) ............................................................................................... 5 n.3

*Cosi, Inc. Secs. Litig.*,
    379 F. Supp. 2d 580 (S.D.N.Y. 2005) ........................................................................................ 5

*DeBenedictis v. Merrill Lynch & Co., Inc.*,
    492 F.3d 209 (3d Cir. 2007) ........................................................................................................ 6

*DeMaria v. Andersen*,
    318 F.3d 170 (2d Cir. 2003) ................................................................................................... 9-10

*Fadem v. Ford Motor Co.*,
    352 F. Supp. 2d 501 (S.D.N.Y. 2005) ........................................................................................ 9

*German v. Fed. Home Loan Mortgage Corp.*,
    885 F. Supp. 537 (S.D.N.Y. 1995) ............................................................................................. 2

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004) ..................................................................................................... 1, 2

*In re Countrywide Fin. Corp. Secs. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...................................................................................... 3

*In re Dynex Capital, Inc. Secs. Litig.*,
    2009 WL 3380621 (S.D.N.Y. Oct. 19, 2009) ....................................................................... 4 n.2

*In re First Union Corp. Sec. Litig.*,
    128 F. Supp. 2d 871 (W.D. N.C. 2001) ................................................................................ 5 n.4

*In re Global Crossing, Ltd. Sec. Litig.*,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003) ..................................................................................... 1, 2

*In re IPO Sec. Litig.*,
    214 F.R.D. 117 (S.D.N.Y. 2002) ............................................................................................ 1, 2

*In re Merrill Lynch & Co., Inc.*,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003) ........................................................................................ 4

| CASES | PAGE(S) |
|---|---|

*In re Merrill Lynch & Co., Inc.*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003) ................................................................................. 7

*In re Novagold Res. Inc. Secs. Litig.*,
    629 F. Supp. 2d 272 (S.D.N.Y. 2009) ......................................................................... 7, n.5

*In re Prestige Brands Holding, Inc.*,
    2006 U.S. Dist. LEXIS 46667 (S.D.N.Y. July 10, 2006) ........................................... 4

*In re Ultrafem, Inc. Sec. Litig.*,
    91 F. Supp. 2d 678 (S.D.N.Y. 2000) ........................................................................... 5

*In re Worldspace*,
    2008 U.S. Dist. LEXIS 56224 (S.D.N.Y. July 21, 2008) ........................................ 10

*Landmen Partners, Inc. v. The Blackstone Group, L.P.*,
    2009 U.S. Dist. LEXIS 87001 (S.D.N.Y. Sept. 22, 2009) ....................................... 10

*La. Mun. Police Employees Ret. Sys. v. Merrill Lynch & Co., Inc.*,
    No. 08-9063 (S.D.N.Y.) ............................................................................................... 3

*LC Capital Partners, LP v. Frontier Ins. Group, Inc.*,
    318 F.3d 148 (2d Cir. 2003) ................................................................................. 7-8, 8

*Lewis v. Casey*,
    518 U.S. 343 (1996) .................................................................................................... 2

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
    No. 08-10783 (S.D.N.Y. Sept. 17, 2009) .................................................................. 9

*O'Brien v. Nat'l Prop. Analysts Partners*,
    719 F. Supp. 222 (S.D.N.Y. 1989) .............................................................................. 9

*Plumbers Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
    2009 WL 3149775 (D. Mass. Sept. 30, 2009) ................................................... passim

*Staehr v. Hartford Fin. Servs. Group, Inc.*,
    547 F.3d 406 (2d Cir. 2008) .................................................................................. 6, 9

*Yucyco, Ltd. v. Republic of Slovenia*,
    984 F. Supp. 207 (S.D.N.Y. 1997) ............................................................................ 10

**STATUTES AND RULES**                                                                                       **PAGE(S)**

Fed. R. Civ. Proc. 8(a) ............................................................................................................. 9

Fed. R. Civ. Proc. 9(b) ............................................................................................................. 9

17 C.F.R. § 229.512(a)(2) ........................................................................................................ 3

**OTHER AUTHORITIES**

Asset-Backed Securities,
    Securities Act Release No. 33,8518, Exchange Act Release No. 34,50905,
    70 Fed. Reg. 1506 (Jan. 7, 2005) ..................................................................................... 5 n.4

The Underwriter Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the Complaint.[1]

## ARGUMENT

### I. PLAINTIFFS LACK STANDING

#### A. Plaintiffs Lack Standing with Respect to Fifty-Five of the Fifty-Nine Challenged Offerings

Plaintiffs do not dispute that the lead and named Plaintiffs only purchased Certificates issued in *four* of the fifty-nine challenged Offerings. As another federal court recently found in an identical lawsuit challenging the sufficiency of disclosures in connection with numerous separate securitizations deriving from a common base registration statement, "the overwhelming weight of authority" holds that Plaintiffs cannot pursue Section 11 and 12 claims as to those Offerings in which they did not purchase Certificates. *See Plumbers Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 2009 WL 3149775, at *4 (D. Mass. Sept. 30, 2009); D. Mem. 3-5. The *Nomura* court refused to conflate the separate offerings pursuant to individual prospectus supplements, and rejected boilerplate allegations that plaintiffs had purchased securities from unspecified underwriters.

Attempting to circumvent the "overwhelming weight of authority" as to their lack of standing, Plaintiffs raise a series of meritless, makeweight arguments. *See* P. Mem. 2-5; *see also* RALI Reply Mem. Sec. I. *First*, Plaintiffs assert that a "lead plaintiff" in a securities case is not required to "have standing to assert each claim." P. Mem. 3 (citing *Hevesi v. Citigroup Inc.*, 366 F.3d 70 (2d Cir. 2004); *In re IPO Sec. Litig.*, 214 F.R.D. 117 (S.D.N.Y. 2002); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189 (S.D.N.Y. 2003)). That argument is misleading, as reflected in the cases Plaintiffs cite. That is, a lead plaintiff need not purchase securities in each of

---

[1] Unless otherwise specified, capitalized terms used herein have the same meaning as in the Underwriter Defendants' opening brief, dated July 17, 2009 (cited herein as "D. Mem."). "P. Mem." refers to Plaintiffs' opposition brief, dated September 18, 2009; "RALI Mem." refers to the RALI Defendants' opening brief, dated July 17, 2009; "RALI Reply Mem." refers to the RALI Defendants' reply memorandum, dated October 30, 2009, which is incorporated by reference herein; "RALI P. Mem." refers to Plaintiffs' brief, dated September 18, 2009, in opposition to the RALI Defendants' motion to dismiss.

the challenged offerings, but *to establish standing, at least one of the named plaintiffs must have purchased securities in each of the challenged offerings.* See *Global Crossing*, 313 F. Supp. 2d at 207 ("it is not enough that plaintiffs seek damages only for a class that has standing; at least one named plaintiff must be a member of that class"); *IPO*, 214 F.R.D. at 122 (same); *Hevesi*, 366 F.3d at 82-84 (same). Because none of the Plaintiffs purchased Certificates issued in fifty-five of the Offerings, all of the claims relating to those Offerings must be dismissed for lack of standing. See D. Mem. 3-5 (collecting cases).

*Second*, Plaintiffs predictably try to defer the inevitable by arguing that the question of their standing should await the class certification stage. As the *Nomura* court held in rejecting a similar ploy, "[w]hile [P]laintiffs maintain that standing is an issue to be resolved at the class certification stage, '[a] plaintiff may not avoid the standing inquiry merely by styling his suit as a class action.'" *Nomura*, 2009 WL 3149775, at *3. Indeed, Judge Scheindlin recently reiterated that "[s]tanding is a threshold question for any case brought before a federal court, regardless of whether plaintiffs bring the case as a class action." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 2009 WL 2828018, at *9 (S.D.N.Y. Sept. 2, 2009); *see also Lewis v. Casey,* 518 U.S. 343, 357 (1996) ("That a suit may be a class action … adds nothing to the question of standing…."). Plaintiffs "may not use the procedural device of a class action to bootstrap [themselves] into standing [they] lack[] under the express terms of the substantive law." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 548 (S.D.N.Y. 1995) (citation omitted).

*Finally*, Plaintiffs contend that they have standing as to the Offerings in which they did not purchase Certificates because of the alleged commonality of the purported misstatements in the Offering Materials. See P. Mem. 4-5. Plaintiffs' position, however, ignores that each of the Offerings involved: (i) an entirely distinct pool of mortgage assets acquired from different originators at different times, (ii) different risk disclosures, (iii) the sale of different securities with different levels of credit protection, and (iv) different underwriters. See D. Mem. 12-14; *see also infra* Sec. III. As a result of those variances, the Offering Materials for each of the fifty-nine Offerings constituted "a new [and separate] registration statement relating to the securities offered

2

therein." 17 C.F.R. § 229.512(a)(2); D. Mem. 4. Therefore, as the *Nomura* court found, the Offering Materials for each Offering must be separately evaluated — there are no "common" misstatements here. *See* D. Mem. 12-14; *see infra* Sec. III.

To hold otherwise would be to allow Plaintiffs to assert claims relating to Offerings in which they did not participate, and against Underwriter Defendants who had nothing to do with the Offerings in which Plaintiffs bought Certificates (*i.e.*, Underwriter Defendants against whom Plaintiffs have no claim). There is simply no basis for such a result. *See, e.g.*, *Nomura*, 2009 WL 3149775, at *3-5 (dismissing Section 11 and 12 claims as to underwriters of offerings in which plaintiffs did not purchase securities; "[t]o hold otherwise would shunt aside the inevitable risk that 'any plaintiff could sue a defendant against whom the plaintiff has no claim in a putative class action…'").

Plaintiffs' reliance on *In re Countrywide Fin. Corp. Secs. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) (P. Mem. 2 n.2, 4, 5) is misplaced. As a threshold matter, *Countrywide* is contrary to the weight of precedent (D. Mem. 3-5) and has been criticized by at least one court in this District. *See La. Mun. Police Employees Ret. Sys. v. Merrill Lynch & Co., Inc.*, No. 08-9063, Tr. at 61 (S.D.N.Y. Feb. 17, 2009) (stating that the Court was "quite skeptical" about the *Countrywide* decision). Moreover, as the *Countrywide* court made clear, "none of the actions before [it we]re based on MBS purchases." 588 F. Supp. 2d at 1144. And the *Countrywide* court recognized "the narrow application of its analysis" to the facts of that case, which involved offerings by a single issuer (Countrywide itself, not individual securitization vehicles), underwritten by overlapping underwriters, and common misstatements in the registration statements and prospectuses. *Id.* at 1167. Those facts have no bearing here, where each of the Offerings involved separate issuers, underwriters, assets, and a unique Prospectus Supplement containing disclosures particular to that Offering. *See* D. Mem. Sec. III. Indeed, those courts that have considered standing in the context of certificates for mortgage-backed securities, like those here, have uniformly held that plaintiffs cannot pursue claims relating to offerings in which they did not invest. *See, e.g.*, *La. Mun. Police Employees*, Tr. at 9-29 (S.D.N.Y. Feb. 17, 2009), Tr. at 7-9, 62 (S.D.N.Y. Feb. 19, 2009); *Nomura*,

3

2009 WL 3149775, at *3-5.

Accordingly, the Court must dismiss (i) all of Plaintiffs' claims against RBS, Deutsche Bank, Credit Suisse, BofA, JP Morgan and Morgan Stanley because Plaintiffs did not purchase any Certificates in Offerings that they underwrote; and (ii) the majority of the claims against the remaining Underwriter Defendants involving those Offerings in which Plaintiffs made no purchases.[2]

### B.  Plaintiffs Lack Standing to Pursue Section 12(a)(2) Claims

Plaintiffs now admit that they made no purchase directly from, and therefore lack standing to assert Section 12(a)(2) claims against, RBS, Deutsche Bank, Credit Suisse, BofA, JP Morgan and Morgan Stanley.  *See* P. Mem. 1, n.1, 6; *see also* D. Mem. 5-6.  Therefore, as Plaintiffs concede, the Section 12(a)(2) claims against those Underwriter Defendants must, at a minimum, be dismissed.

However, Plaintiffs erroneously argue that they can nonetheless pursue Section 12(a)(2) claims against Goldman Sachs, Citigroup and UBS simply because they were "co-lead Underwriters in the Offerings in which Plaintiffs made their Certificate purchases."  P. Mem. 6.  But *the Complaint does not allege* that Plaintiffs either purchased Certificates from Goldman Sachs, Citigroup and UBS or that Plaintiffs bought any Certificates directly in the Offerings, as opposed to the secondary market.  *See* D. Mem. 5-6; *see also In re Prestige Brand Holding, Inc.*, 2006 U.S. Dist. LEXIS 46667, at *26 (S.D.N.Y. July 10, 2006) ("[Section 12(a)(2)] provides a claim only in favor of those who purchased stock directly in an initial public offering."); *In re Merrill Lynch & Co., Inc.*, 272 F. Supp. 2d 243, 255 (S.D.N.Y. 2003) ("Under Section 12(a)(2), 'only a defendant from whom the plaintiff purchased securities may be liable'").

Rather, Plaintiffs merely allege that their Certificates were purchased "pursuant and traceable to the Registration Statements and Prospectus Supplements."  *See* P. Mem. 6; ¶¶ 19-20.  That is insufficient to establish Section 12(a)(2) standing.  *See* D. Mem. 5-6 (citing cases); *Nomura*, 2009

---

[2] This Court's decision in *In re Dynex Capital, Inc. Secs. Litig.*, 2009 WL 3380621, at *1 (S.D.N.Y. Oct. 19, 2009) is not to the contrary.  That case involved (i) Section 10(b) claims that lack the statutory standing requirements of Section 11 and 12(a)(2) claims, and (ii) common misstatements that do not exist here.

WL 3149775, at *4 ("If plaintiffs did in fact purchase the Certificates directly from the defendants, they should have said so. An evasive circumlocution does not suffice as a substitute.").[3] The cases cited by Plaintiffs (P. Mem. 6) are not to the contrary — in fact, they confirm the insufficiency of Plaintiffs' allegations. *See Cosi, Inc. Secs. Litig.*, 379 F. Supp. 2d 580, 589 (S.D.N.Y. 2005) (dismissing Section 12(a)(2) claim where, as here, plaintiffs alleged that they "bought their shares 'pursuant to or traceable to' the Prospectus" but not "that they purchased their shares in the IPO…."); *In re Ultrafem, Inc. Sec. Litig.*, 91 F. Supp. 2d 678 (S.D.N.Y. 2000) (plaintiffs' allegations of purchases pursuant to a registration statement insufficient for Section 12(a)(2) standing).[4]

## II. PLAINTIFFS' CLAIMS ARE TIME-BARRED

Plaintiffs do not dispute that there are two relevant dates for determining when Plaintiffs were placed on inquiry notice of their claims: (i) May 18, 2008 (one year before the amended Complaint was filed) as to Plaintiffs' claims against Citigroup, BofA, JP Morgan, Morgan Stanley — who were first named as defendants in the amended Complaint — and all claims relating to the forty-six transactions first challenged in Plaintiffs' amended Complaint; and (ii) September 22, 2007 (one year before Plaintiffs' first complaint was filed) as to the claims against Goldman Sachs, RBS, Deutsche Bank, Credit Suisse and UBS relating to the thirteen transactions challenged in the initial complaint. *See* D. Mem. Sec. II; RALI Mem. Sec. VI.

---

[3] Additionally, Plaintiffs' contentions that the timing of their purchases is consistent with their having purchased Certificates in the Offerings (P. Mem. 6, n.11) have no merit. Plaintiffs do not explain how a purchase made *six months* after the closing date for an offering (as is the case with Boilermaker) could possibly be in that offering. *See* D. Mem. 6 n.5. Moreover, Plaintiffs' admission that the New Jersey Funds entered into binding purchase commitments *prior* to the issuance of the Prospectus Supplements (P. Mem. 6, n.11) bars their claims as a matter of law. *See* D. Mem. 6 n.5; *APA Excelsior III L.P. v. Premiere Techs.*, 476 F.3d 1261, 1272 (11th Cir. 2007).

[4] Plaintiffs spend a disproportionate amount of energy attempting to rebut the secondary point that Plaintiffs have not suffered any cognizable injury for standing purposes. *See* D. Mem. 5 n.4; P. Mem. 6-8. Regardless, Plaintiffs' arguments are unavailing. Unlike publicly traded equity or debt instruments, mortgage-backed securities are contractual rights to a portion of principal and interest payments from underlying loan pools, whose value is derived from the future cash flows generated by the loan pools. *See Asset-Backed Securities,* Securities Act Release No. 33,8518, Exchange Act Release No. 34,50905, 70 Fed. Reg. 1506, 1508, 1510-11 (Jan. 7, 2005); *In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 894 n.22 (W.D.N.C. 2001) ("Valuation of mortgage-backed securities such as those at issue here essentially is an exercise in estimating expected future cash flows."). Investors in mortgage-backed securities consequently can suffer "damages" only when they do not receive cash flow payments to which they are entitled. The Complaint does not allege that Plaintiffs have failed to receive any such payments.

### A. Plaintiffs Do Not Dispute That They Were on Inquiry Notice by May 18, 2008

Plaintiffs acknowledge that the relevant date for determining the timeliness of the claims first raised in the amended Complaint is May 18, 2008. *See* P. Mem. 8. Nonetheless, Plaintiffs' *entire* effort to avoid dismissal of these claims on limitations grounds consists of a cursory assertion, buried in a footnote, providing that the same reasons that they purportedly were not on inquiry notice as of September 22, 2007 demonstrate that they were not on notice approximately eight months later, on May 18, 2008. *See* P. Mem. 13 n.17.

Plaintiffs ignore information made available to the public over the eight-month period from September 22, 2007 to May 18, 2008 — a period when the public record was flooded with news and warnings about the subprime mortgage market, specifically the role of the Rating Agencies and mortgage loan originators, and when numerous lawsuits raising allegations virtually identical to Plaintiffs' were filed. *See* D. Mem. 7. All of that information would have placed any reasonable investor on inquiry notice. Plaintiffs' silence on this point effectively concedes that the claims first raised in the amended Complaint are time-barred and should be dismissed.

### B. Plaintiffs Were on Inquiry Notice of Their Claims by September 22, 2007

Plaintiffs' assertions that they were not on inquiry notice of the claims raised in their initial complaint by September 22, 2007 are equally untenable. Plaintiffs' efforts to downplay the publicly available information calling attention to the issues underlying their claims are unavailing.

*First*, Plaintiffs contend that the mass of publicly available information about the models used by the Rating Agencies, the role and practices of the Rating Agencies and the prevailing underwriting standards (D. Mem. 8-9) did not trigger inquiry notice because it was "too general" and not specific to the Issuer Defendants. *See* P. Mem. 10. That is meritless. "[T]he more widespread and prominent the public information disclosing the facts underlying the fraud, the more accessible this information is to plaintiffs, and the less company-specific the information must be." *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 432 (2d Cir. 2008); *see also DeBenedictis v. Merrill Lynch & Co., Inc.*, 492 F.3d 209, 217-18 (3d Cir. 2007) (news articles about industry practices related to plaintiff's claims triggered inquiry notice).

6

Plaintiffs' dismissal of the wealth of available information as "too general" to trigger inquiry notice is particularly disingenuous here because they rely on the *very same sources* in contending that the Offering Materials contained misstatements. *Compare, e.g.*, P. Mem. 9, 12 (contending that faulty underwriting and origination practices were not knowable until late 2008 for purposes of inquiry notice) *with* P. RALI Mem. 8-9 (contending that Plaintiffs are entitled to an inference that Offering Materials misstated underwriting guidelines based on revisions of Rating Agencies' models in mid-2007); *see also* D. Mem. 8-9. Plaintiffs cannot have it both ways. If the information about purportedly systemic industry practices is sufficient to allege that the Offering Documents contained misstatements or omissions, then that very same information was surely sufficient to have suggested "the probability of an earlier 'untrue statement' or 'omission.'" *In re Novagold Res. Inc. Secs. Litig.*, 629 F. Supp. 2d 272, 288 (S.D.N.Y. 2009); *see also In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 381 (S.D.N.Y. 2003) ("It is inconsistent for plaintiffs to argue, on the one hand, that the dramatically reversed financial data … shows that the previous statements were false and misleading, but on the other hand, that it could not have placed plaintiffs on inquiry notice of the fraud.").[5]

*Second*, Plaintiffs' attempt at tying inquiry notice to the downgrading of a majority of the Certificates by the Rating Agencies (P. Mem. 9), is nonsensical. As a threshold matter, Plaintiffs expressly predicate the alleged misstatements on information widely available before any Certificates were downgraded, not on the fact of the downgrades themselves. *See* D. Mem. Sec. III. In any event, there is no precedent — and Plaintiffs cite none — supporting Plaintiffs' novel argument that negative information only triggers inquiry notice if the market or rating agencies react adversely to it. To the contrary, it is the negative information itself — and not the market's reaction — that is the relevant factor for inquiry notice. *See, e.g.*, *LC Capital Partners, LP v. Frontier Ins. Group, Inc.*,

---

[5] This is particularly so here, where Plaintiffs have asserted Section 11 and 12(a)(2) claims, which require a lower quantum of information for an investor to be placed on inquiry notice. *See, e.g.*, *Novagold*, 629 F. Supp. 2d at 288 (when the complaint "repeatedly advise[s] that its Securities Act claims are not based on fraud … [a] plaintiff is thus on inquiry notice when it learns of the probability of an earlier 'untrue statement' or 'omission,' not when it learns a misstatement involved fraud.").

7

318 F.3d 148, 254-55 (2d Cir. 2003) (plaintiffs' claims were time-barred where reserves taken by the defendant, not their impact on the company's stock price or debt rating, provided inquiry notice).

*Third*, Plaintiffs argue that the flood of storm warnings was rendered meaningless because intermittently interspersed amongst these warnings were reassurances — so-called "comforting words" — from the Rating Agencies. *See* P. Mem. 10. However, as the Second Circuit has explained, "reassuring statements will prevent the emergence of a duty to inquire or dissipate such a duty *only if an investor of ordinary intelligence would reasonably rely on the statements to allay the investor's concerns*." *LC Capital Partners*, 318 F.3d at 155 (emphasis added). Given the vast public record about the role and practices of the Rating Agencies (D. Mem. 8-9), Plaintiffs have no basis to claim reasonable reliance on the purported "reassuring statements" from the Rating Agencies.

*Fourth*, Plaintiffs' quibbles with the contents of certain of the specific articles and reports cited by the Underwriter Defendants are frivolous. For example:

- Plaintiffs assert that high delinquency rates disclosed in Form 10-D filings with the SEC could not have notified a reasonable investor of potential problems with the allegedly wrongful underwriting and origination practices. *See* P. Mem. 12. *But the Complaint specifically alleges that those delinquency rates "were highly indicative of failed and deficient loan underwriting and origination practices." See* D. Mem. 9; ¶¶ 67, 69-70; *see also* P. Mem. 9 (contending that delinquencies and foreclosures soon after issuance of the Certificates "is quantitative evidence supporting the conclusion that the collateral was impaired from the outset.").

- Plaintiffs assert that disclosures regarding inadequate due diligence by Bohan and Clayton (D. Mem. 10) are irrelevant because these entities are "not defendants in this action." P. Mem. 13 n.16. But the Complaint dwells at length on the same disclosures regarding Bohan and Clayton as supposed proof that the Offering Materials misstated facts relevant to the Certificates. ¶¶ 80-87; *see also* P. Mem. 9.

- Plaintiffs claim that an April 8, 2008 *New York Times* article cited in the Complaint was published too late to provide a storm warning (P. Mem. 9), but disregard that (i) the article was cited as evidence of storm warnings as of *May 18, 2008* (D. Mem. 11); and (ii) the article reported that Moody's had announced it was revising its models one year earlier in April 2007. *See* D. Mem. 11. Once again, Plaintiffs expressly rely on that revision of models as a basis for their claims. ¶¶ 96-97.

- Plaintiffs' assertion that the "first disclosure of the ratings shopping practice came in June 2008" (P. Mem. 11) is nonsensical. Ratings shopping was widely discussed in the press by August 2007. *See* D. Mem. 8.

8

- Plaintiffs' contention that the public news reports did not warn that the Rating Agencies were specifically involved in the structuring of the Certificates at issue here is misplaced, given the definitive warnings that "Moody's and its peers" helped clients "put together complicated mortgage securities before they receive[d] an official ratings stamp."  Jesse Elsinger, *Overrated*, Portfolio, Sept. 2007; *see also* D. Mem. 9; *Staehr*, 547 F.3d at 432.

### III.     PLAINTIFFS' ALLEGATIONS DO NOT SATISFY RULE 9(b) OR 8(a)

The Complaint — in violation of Rules 9(b) and 8(a) — makes sweeping allegations about supposed falsehoods in the Offering Materials in their entirety, without connecting those allegations to the Offering Materials for any specific Offering.  *See* D. Mem. 12-14; *see also* RALI Reply Mem. Sec. III.  In an attempt to remedy that deficiency, Plaintiffs have submitted a declaration that purports to identify allegedly misleading statements in each Prospectus Supplement.  *See* P. Mem. 14 n.18; Declaration of Joel Laitman ¶ 2.  However, "[i]t is long standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs."  *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005); *see also O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (same).

In any event, Plaintiffs' new allegations do not cure the Complaint's failings.  Plaintiffs do not dispute that the specific details of each Offering and the attendant disclosures varied across the Offerings — the descriptions of the mortgage pools, the types of credit enhancements used, and the risk disclosures all varied based on the underlying collateral.  *See* D. Mem. 13.  In this context, simply pointing to statements in each Prospectus Supplement and asserting that all of them are false, irrespective of the differing disclosures modifying the challenged statements, is insufficient — Plaintiffs must explain *how* the statements were false when made in light of the specific information particular to *each* Prospectus Supplement.  *See, e.g., NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, No. 08-10783, Tr. at 38 (S.D.N.Y. Sept. 17, 2009) (dismissing action involving virtually identical Section 11, 12 and 15 claims relating to multiple offerings of mortgage-backed securities, for failure to specify which of the statements in the challenged prospectus supplements were false or to explain how they were false); *DeMaria v. Andersen*, 318 F.3d 170, 180 (2d Cir. 2003) ("Our inquiry does not focus on whether 'particular statements, taken separately, were

literally true, but whether defendants' representations, taken together and in context, would have misl[ed] a reasonable investor about the nature of the [securities].'"); D. Mem. 13-14. This failing is particularly egregious here given that different Underwriter Defendants were involved in each of the Offerings. *See, e.g.*, *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 219 (S.D.N.Y. 1997).

### IV.   PLAINTIFFS' SECTION 15 CLAIM SHOULD BE DISMISSED

Instead of addressing the Underwriter Defendants' grounds for dismissal of their Section 15 claims (D. Mem. 14-15), Plaintiffs simply point to the allegations contained in the Complaint. *See* P. Mem. 14-15. Those allegations are insufficient: they are entirely conclusory; do not allege that any of the Underwriter Defendants controlled the management and policies of any of the "controlled" persons; and do nothing more than assert "influence" as opposed to the required "control." *See* D. Mem. 14-15 (collecting cases). Plaintiffs' reliance on *In re Worldspace*, 2008 U.S. Dist. LEXIS 56224, at *20-21 (S.D.N.Y. July 21, 2008) is disingenuous, as that case did not address whether allegations such as Plaintiffs' are sufficient to demonstrate control.

### CONCLUSION

Plaintiffs' claims against the Underwriter Defendants have no merit. Accordingly, "[b]ecause Plaintiff elected to stand on it[s] pleading rather than to amend it in the face of Defendant's motion to dismiss as allowed by [this Court's] Individual Practices, Plaintiff's claims [must be] dismissed with prejudice." *Landmen Partners, Inc. v. The Blackstone Group, L.P.*, 2009 U.S. Dist. LEXIS 87001, at *37 (S.D.N.Y. Sept. 22, 2009).

Dated:   October 30, 2009

FRIED, FRANK, HARRIS, SHRIVER
 & JACOBSON LLP

By:   /s/ William G. McGuinness
         William G. McGuinness

One New York Plaza
New York, New York 10004-1980
(212) 859-8000
william.mcguinness@friedfrank.com

*Attorneys for Underwriter Defendants*