Stuart J. Baskin
Richard F. Schwed
Christopher R. Fenton
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

*Attorneys for the RALI Defendants*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                                    :

New Jersey Carpenters Health Fund, New Jersey    :
Carpenters Vacation Fund and Boilermaker         :
Blacksmith National Pension Trust, *on Behalf of*  :
*Themselves and All Others Similarly Situated*,    :
                                                    :
                        Plaintiffs,           :
                                                      :
             v.                               :
                                                      :

Residential Capital, LLC, Residential Funding, LLC,  :
Residential Accredited Loans, Inc., Bruce J. Paradis,  :
Kenneth M. Duncan, Davee L. Olson, Ralph T. Flees,  :    Case No.: 08-CV-8781 (HB)
Lisa R. Lundsten, James G. Jones, David M. Bricker,  :
James N. Young, Residential Funding Securities    :
Corporation d/b/a GMAC RFC Securities, Goldman,  :
Sachs & Co., RBS Securities, Inc. f/k/a/ Greenwich  :
Capital Markets, Inc. d/b/a RBS Greenwich Capital,  :
Deutsche Bank Securities, Inc., Citigroup Global   :    **ECF CASE**
Markets, Inc., Credit Suisse Securities (USA) LLC,  :
Bank Of America Corporation *as successor-in-interest*  :
*to* Merrill Lynch, Pierce, Fenner & Smith, Inc., UBS  :
Securities, LLC, JPMorgan Chase, Inc., *as successor-*  :
*in-interest to* Bear, Stearns & Co., Inc., and Morgan  :
Stanley & Co., Inc.,                          :
                                                    :
                    Defendants.        :
-------------------------------------------------------------------x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE RALI
# DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................i

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT......................................................................................................................2

I.     PLAINTIFFS LACK STANDING.........................................................................2

    A.     Plaintiffs' Attempt to Delay Resolution of the Standing Inquiry Until Class
       Certification Should Be Rejected ..............................................................2

    B.     Plaintiffs Cannot Create Standing By Alleging "Common"
       Misrepresentations and Omissions ..........................................................3

II.    PLAINTIFFS' ALLEGATIONS FAIL TO SATISFY RULE 9(b) .....................5

III.   PLAINTIFFS FAIL TO ALLEGE AN ACTIONABLE MISREPRESENTATION
       OR OMISSION .......................................................................................................6

    A.     Plaintiffs Fail to State a Claim Based on the Ratings Agencies' Failures...............6

    B.     Plaintiffs Fail to Allege Material Misrepresentations or Omissions
       Concerning Underwriting Guidelines........................................................7

    C.     Plaintiffs Fail to Allege Delinquency Rates Were Misstated ...................9

    D.     Plaintiffs Fail to Allege Material Misrepresentations or Omissions Regarding
       Credit Support......................................................................................10

    E.     Plaintiffs Fail to Allege Loan-to-Value Ratios Were Misstated............................10

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1397 (2009)........................................................................10

*In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008)....................4, 5

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2000 WL 1357509
   (S.D.N.Y. Sept. 20, 2000)...................................................................................................4

*In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897, 2009 WL 3380621 (S.D.N.Y. Oct.
   19, 2009).......................................................................................................................4, 9

*Friedman v. Mohasco Corp.*, 929 F.2d 77 (2d Cir. 1991)............................................................6

*German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537 (S.D.N.Y. 1995) .......................3

*In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189 (S.D.N.Y. 2003)...................... 4, 6

*Hoffman v. UBS-AG*, 591 F. Supp. 2d 522 (S.D.N.Y. 2008) ........................................................3

*Lewis v. Casey*, 518 U.S. 343 (1996).........................................................................................3

*Miller v. Lazard*, 473 F. Supp. 2d 571 (S.D.N.Y. 2007) ............................................................8

*Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2 (2d Cir. 1996).............................................7

*Panther Partners, Inc. v. Ikanos Comm'ns, Inc.*, 538 F. Supp. 2d 662 (S.D.N.Y. 2008),
   *aff'd*, 2009 WL 2959883 (2d Cir. Sept. 17, 2009)................................................................9

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, No.
   08-10446-RGS, 2009 WL 3149775 (D. Mass. Sept. 30, 2009) ..............................3, 5, 7, 8

*Pollio v. MF Global, Ltd.*, 608 F. Supp. 2d 564 (S.D.N.Y. 2009) ..............................................10

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004)........................................................................5

*In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579 (S.D.N.Y. 2006)..........3

*Warth v. Seldin*, 422 U.S. 490 (1975)........................................................................................2

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), *cert.
   denied*, 129 S. Ct. 2011 (U.S. Apr. 20, 2009)......................................................................2

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief does nothing to correct the fundamental problem with this lawsuit: plaintiffs have not identified a single actionable misrepresentation or omission and, further, they lack standing because they have not purchased the bulk of the securities identified in the lawsuit. Nor does it change the fact that plaintiffs are misusing the Securities Act in an attempt to recoup losses caused by their decision to purchase mortgage-backed securities shortly before the housing and stock markets crashed. The RALI Defendants did not warrant that the markets would remain forever robust.

In an effort to manufacture a Securities Act claim, plaintiffs assert that the offering materials failed to disclose aggressive underwriting practices for mortgage loans and alleged misconduct by ratings agencies that permitted those mortgages to be sold to plaintiffs. This reads the materials with one eye closed. When read as a whole, the offering materials not only fully disclosed the permissive underwriting guidelines, but also expressly warned of the very risks that form the basis of the Complaint: "applying less stringent underwriting standards creates additional risks that losses on the mortgage loans will be allocated to certificateholders." No reasonable investor could have read these documents without realizing that a significant increase in defaults was a distinct possibility, especially if the housing market were to crash.

Unable to plead a single *fact* to support their claims that any statement was false or misleading *when made*, plaintiffs attempt to obscure the significance of the extensive disclosures contained in the offering materials by stripping each statement of its context and filling the wide factual gaps in the Complaint with conclusory allegations concerning events that took place subsequent to the offerings. The problem with this approach is obvious: neither parsing the

prospectus nor pleading by hindsight is a permissible means of alleging a claim under the

Securities Act, and complaints that rely on these tactics routinely are dismissed.

## ARGUMENT

### I.    PLAINTIFFS LACK STANDING

#### A.    Plaintiffs' Attempt to Delay Resolution of the Standing Inquiry Until Class Certification Should Be Rejected

Plaintiffs concede that they only purchased in four of the 59 challenged offerings.

However, plaintiffs insist that defendants' challenge to their standing is "premature" because a

lead plaintiff need not have purchased in each offering to represent the class. (RALI Opp. at 5-6;

U/W Opp. at 2-4.)[1]  But defendants do not contend that a *lead* plaintiff must have standing for all

of the claims; rather, we rely on well-established law that at least one *named* plaintiff must have

standing for each of the claims. (RALI Brief at 6-7; U/W Brief at 3-5.)  As demonstrated in

defendants' moving brief, the law of this Circuit is clear that where no *named* plaintiff has

purchased securities in a challenged offering, plaintiffs' claims based on that offering must be

dismissed. (*Id.*)  The authorities on which plaintiffs rely agree with defendants.[2]

Plaintiffs attempt to excuse this fatal defect by postulating that unknown plaintiffs may

intervene at some later date. (RALI Opp. at 6; U/W Opp. at 4-5.)  At its core, this is wishful

thinking that standing may occur sometime in the future, and an argument that the named

plaintiffs do not need to meet standing requirements because they purport to represent a class

---

[1] Citations to "RALI Brief" refer to the Memorandum of Law in Support of the RALI Defendants' Motion to Dismiss; citations to "U/W Brief" refer to the Memorandum of Law in Support of the Underwriter Defendants' Motion to Dismiss. Citations to "RALI Opp." refer to Plaintiffs' Memorandum of Law in Opposition to the RALI Defendants' Motion to Dismiss; citations to "U/W Opp." refer to Plaintiffs' Memorandum of Law in Opposition to the Underwriter Defendants' Motion to Dismiss.

[2] *See, e.g., W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 n.5 (2d Cir. 2008) ("[D]istrict courts should be mindful that *named* plaintiffs in a class action 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)), *cert. denied*, 129 S. Ct. 2011 (U.S. Apr. 20, 2009).

that does. Plaintiffs' assertion contravenes well-settled law, as it is widely recognized that "the question of standing is totally separate and distinct from the question of a plaintiff's right to represent a purported class under Rule 23." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 548 (S.D.N.Y. 1995); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) (the fact "'[t]hat a suit may be a class action . . . adds nothing to the question of standing . . . .'") (citations omitted). Accordingly, a plaintiff "may not use the procedural device of a class action to bootstrap himself into standing he lacks under the express terms of the substantive law." *German*, 885 F. Supp. at 548. Instead, plaintiffs must adequately allege standing *at the time the suit is brought.  E.g., Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 532 (S.D.N.Y. 2008).

Based on this reasoning, courts in this Circuit and others routinely dismiss claims based on securities that named plaintiffs did not purchase. *See, e.g., Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, No. 08-10446-RGS, 2009 WL 3149775 at \*4 (D. Mass. Sept. 30, 2009) (dismissing claims based on securities that named plaintiffs did not purchase); *Hoffman*, 591 F. Supp. 2d at 532 (holding that "[t]he standing question is antecedent to the class certification issue" and dismissing claims based on funds in which plaintiffs did not invest); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006) ("[T]he Article III standing determination should precede that of class certification.  With regard to the sixty-eight funds of which Plaintiffs own no shares, Plaintiffs do not have standing to assert any claims . . . ."). This Court should do the same as to 55 of the 59 offerings.

**B.    Plaintiffs Cannot Create Standing By Alleging "Common" Misrepresentations and Omissions**

Plaintiffs argue that they need only allege misrepresentations and omissions "common" to all the offerings in order to create standing with respect to those certificates they did not actually purchase. (U/W Opp. at 4-5.) However, the case on which they primarily rely in

support of their sweeping theory – *In re Countrywide Financial Corp. Securities Litigation*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) – is of no help to plaintiffs.[3]  As an initial matter, *Countrywide* is in direct conflict with the law of this Circuit.  *In re Global Crossing Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 207 (S.D.N.Y. 2003) ("a named plaintiff must have purchased shares traceable to the challenged offering" in order to have standing).

Moreover, even if *Countrywide* were not contrary to the law in this Circuit, it would have no application here.  In *Countrywide*, the Court "emphasize[d] the narrow application" of its decision, which was based on the unique circumstances of that case.  In particular, all of the securities had been issued by the same entity (Countrywide), and the alleged misrepresentations and omissions, which all concerned Countrywide's financial condition, were primarily made in the shelf-registration statement.  588 F. Supp. 2d at 1164.

In this case, unlike in *Countrywide*, the certificates were issued by 59 trusts (each a separate legal entity) pursuant to one of two self-registration statements, six base prospectuses and 59 prospectus supplements.  In stark contrast to *Countrywide*, here plaintiffs allege numerous misrepresentations and omissions made in prospectus supplements, each of which contained detailed historical information, financial statements and risk disclosures unique to the different pools of mortgages underlying each of the 59 certificates.  In addition, in this case, even those parts of the shelf-registration statements that plaintiffs allege contained misrepresentations and omissions were dependent on, and in some cases directed prospective investors to, the

---

[3] This Court's decision in *In re Dreyfus Aggressive Growth Mutual Fund Litigation*, No. 98 Civ. 4318, 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000), on which plaintiffs also rely, is inapposite.  In *Dreyfus*, the Court was asked to decide plaintiff's motion for class certification, not defendants' motion to dismiss.  The Court therefore did not analyze plaintiffs' allegations in the context of standing, but under Rule 23(a)(3), which is not appropriate here for the reasons explained in Section I.A, *supra*.  The Court's recent decision in *In re Dynex Capital, Inc. Securities Litigation* also has no application here.  There, plaintiffs' standing was premised largely on particularized allegations that defendants engaged in a fraudulent scheme, No. 05 Civ. 1897, 2009 WL 3380621, at *1, *25 (S.D.N.Y. Oct. 19, 2009), which are the type of allegations plaintiffs in this case expressly purport to disclaim (RALI Opp. at 12-14).

supplemental prospectus for each offering. (*See, e.g.*, Compl. ¶ 207 (alleging misrepresentation in section of shelf-registration that *twice* refers to the prospectus supplement for more detailed information).)

Indeed, this case is exactly like *Nomura*, where the district court declined to apply *Countrywide* to facts nearly identical to those alleged here. There, the certificates in question were mortgage-back securities issued by separate trusts established to hold different pools of mortgages and offered pursuant to separate supplemental prospectuses. *Id.* at *2. Relying on *Countrywide*, the plaintiffs in *Nomura* argued that "Lead Plaintiffs clearly have standing to assert §11 claims on behalf of all purchasers of the Certificates [even though named plaintiffs only purchased two of the eight certificates], since each purchaser necessarily acquired his or her Certificate pursuant and/or traceable to the same false and misleading Registration Statements as Lead Plaintiffs." (Mem. of Law in Support of Lead Pl.'s Opp. to Defs' Mot. to Dismiss, *Nomura*, No. 08-10446, at 41.) The district court rejected this argument. Noting the "overwhelmingly weight of authority," the Court held that "the named plaintiffs are incompetent to allege an injury caused by the Certificates that they themselves never purchased" and dismissed those claims for lack of standing. *Nomura*, 2009 WL 3149775, at *3-*4.

## II.    PLAINTIFFS' ALLEGATIONS FAIL TO SATISFY RULE 9(b)

Plaintiffs do not attempt to defend their pleading under Rule 9(b) but instead contend that they need not satisfy heightened pleadings requirements because they do not allege "fraud" in the Complaint and do not assert a Section 10(b) claim. (RALI Opp. at 12-14.) Plaintiffs misstate the standard. Under the "*sounds* in fraud" doctrine long applied in this Circuit, whether Rule 9(b) applies turns on the facts and conduct alleged, not whether plaintiffs use the word "fraud." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). That standard is met here, as the Complaint alleges that defendants concealed an "assembly line" to securitize bad loans

originated under standards that were "systematically disregarded" to enable originators "to outrun their own delinquency rates and raise capital" by making as many loans as possible. (Compl. ¶¶ 6, 10, and 222.)  Although plaintiffs conveniently ignore these allegations in their response, that makes their actual pleading no less a reality.

III.    **PLAINTIFFS FAIL TO ALLEGE AN ACTIONABLE MISREPRESENTATION OR OMISSION**

    A.    **Plaintiffs Fail to State a Claim Based on the Ratings Agencies' Failures**

First, plaintiffs do not dispute that the single statement made in the offering materials concerning ratings – that the certificates, "[w]hen issued, . . . will receive ratings which are not lower than those listed in the . . . prospectus supplement" – was in fact true.  That alone should end discussion about ratings agencies.  Second, even if those ratings were flawed, plaintiffs allege no facts from which it could be inferred that the ratings agencies (much less the RALI defendants) did not actually believe that the ratings assigned were correct.  *Friedman v. Mohasco Corp.*, 929 F.2d 77, 79 (2d Cir. 1991) (dismissing complaint "alleging that defendants represented that securities to be issued would, in the opinion of the financial advisors, have a specified market value"); *Global Crossing*, 313 F. Supp. 2d at 210.  Instead, plaintiffs offer only vague allegations concerning ratings shopping and the ratings agencies' role in structuring securities generally.  But nowhere in the Complaint do plaintiffs allege that these practices took place in connection with the RALI offerings.  Although plaintiffs assert that their allegations "explicitly and implicitly" establish such a connection (RALI Opp. at 16-17), that is simply not true.  None of the after-the-fact admissions by ratings agency insiders on which plaintiffs rely even mention the RALI defendants or offerings.  (*See* Compl. ¶¶ 113-27.)  And none of those statements about industry-wide practices made in the wake of the subprime mortgage crisis (in

2008), support an inference that the ratings for the RALI certificates were compromised at the time they were offered (in 2006 and 2007). *See Nomura*, 2009 WL 3149775, at \*8-\*9 (dismissing allegations of industry-wide wrongdoing by ratings agencies that did not reference the challenged offerings and were made years after the registration statements issued).

    **B.**    **Plaintiffs Fail to Allege Material Misrepresentations or Omissions Concerning Underwriting Guidelines**

    Defendants demonstrated in their moving brief that the offering materials, read as a whole, do not contain *any* misrepresentations or omissions concerning underwriting guidelines. (RALI Brief at 14-21.)  Plaintiffs attempt to skirt this issue by mischaracterizing defendants' argument, stating that "Defendants must satisfy a high burden to demonstrate that the misstatements and omissions are immaterial as a matter of law."  (RALI Opp. at 17-18.) However, defendants are not arguing about the *materiality* of any alleged misrepresentation or omission; rather, we are arguing about the *existence* of any misrepresentation or omission.

    The fundamental flaw in plaintiffs' argument is that they ignore the basic fact that offering materials must be read as a whole to determine whether documents are misleading or inaccurate.  (*See* RALI Brief at 10 (gathering cases).)  Here, when the offering materials are read in the proper way, no reasonable investor could have believed that the mortgage underwriting guidelines were anything but "aggressive."  The offering materials fully disclosed the permissive nature of the guidelines and warned investors of exactly the risk plaintiffs claim went undisclosed: "the mortgage loans have been originated using underwriting standards that are *less stringent* than the underwriting standards applied by other first lien mortgage loan purchase programs . . . . *Applying less stringent underwriting standards creates additional risks that losses on the mortgage loans will be allocated to certificateholders*."  (RALI Brief at 5 (quoting Ex. B., S-22-23) (emphasis added).)  *See Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir.

1996) ("A reasonable investor could not have read the prospectuses without realizing that . . . a significant downturn in interest rates could decrease the value of the Trusts and decrease earnings.")[4]

In addition, the offering materials also contained detailed disclosures concerning each of the four guidelines issues about which plaintiffs complain. (RALI Brief at 14-21.) For example, the offering materials not only fully disclosed that the vast majority of loans were made "to borrowers whose income is not required to be disclosed or verified" but also expressly warned that this practice *"may increase the risk that the borrower's income is less than represented."* (RALI Brief at 5 (quoting Ex. B, 2006-Q07, S-22-23) (emphasis added).) Thus, "[p]laintiffs' argument that they were not on notice of originator's 'soft' underwriting practices begs credulity."[5] *Nomura*, 2009 WL 3149775, at *5-*6 (dismissing plaintiffs' claims where the offering materials disclosed that all of the mortgages were originated pursuant to guidelines "less stringent than[] the underwriting standards established by Fannie Mae or Freddie Mac" and that the majority of loans had been originated without first verifying borrowers' incomes); *see also Miller v. Lazard*, 473 F. Supp. 2d 571, 579 (S.D.N.Y. 2007) ("If such a clear conflict between the language of the prospectus and the alleged misstatements or omissions exists, dismissal is appropriate because no set of facts could prove the plaintiff's claims.").

---

[4] Plaintiffs also criticize the use of "risk factors" generally, but provide no reasons as to why the detailed risk disclosures here did not adequately warn putative class members about the risks that form the basis of the Complaint. (RALI Opp. at 18.) In addition, plaintiffs entirely overlook the fact that defendants do not rely on generalized "risk factors," but instead rely on the comprehensive *explanations* of underwriting standards and express *qualifications* elucidated in the relevant portions of the challenged offering materials. (*See, e.g.*, RALI Brief at 17 (citing Ex. B, S-57); *id.* at 19 (citing Ex. B, S-58).)

[5] Plaintiffs' allegations that the offering materials failed to disclose that appraisers may lack independence also fail. (RALI Opp. at 16-17.) It was clearly disclosed that appraisers may be "staff appraisers employed by the originators." (RALI Brief at 17 (quoting Ex. B., S-57).) At least one court has held that "plaintiffs cannot credibly claim a lack of fair warning" regarding appraisers' lack of independence where the offering materials used disclosure language identical to that contained in the offering materials at issue here. *Nomura*, 2009 WL 3149775, at *6.

Unable to allege facts to show that the disclosures regarding guidelines were false when made, plaintiffs attempt to revive their claims by arguing that this case is really about a single "core omission" – the failure to disclose that the guidelines were "systematically disregarded." (RALI Opp. at 17-20.)  Conspicuously absent from the Complaint are any allegations of *fact* that would support plaintiffs' conclusion that the originators disregarded their underwriting guidelines when issuing the mortgages underlying the certificates plaintiffs purchased, much less that defendants were aware of this alleged disregard.[6]  Instead, plaintiffs argue that this alleged "systematic disregard" is "reflected by the massive rating downgrades, delinquencies and foreclosures, and subsequent disclosures regarding the reckless practices of the principal originators." (RALI Opp. at 20.)  As set forth in the RALI Defendants' moving brief, this is classic "fraud by hindsight" pleading that cannot survive a motion to dismiss.  (RALI Brief at 2, 12, 14 and 21.) [7]

C.    **Plaintiffs Fail to Allege Delinquency Rates Were Misstated**

In their opening brief, defendants demonstrated that plaintiffs fail to allege how statements concerning delinquency rates were false.  (RALI Brief at 21-22.)  Unable to dispute the accuracy of these statements at the time of the offerings, plaintiffs instead argue that the fact that "delinquency rates skyrocketed immediately after each offering" supports the inference they were misleading when made.  (RALI Opp. at 22.)  Plaintiffs' argument fails, as it is well-settled

---

[6] Throughout their response, plaintiffs repeatedly assert that they need not allege scienter to state a claim under Sections 11 or 12. (*See, e.g.,* RALI Opp. at 15, 17, 19, 20 n. 14.)  Plaintiffs miss the point.  Defendants argue not that plaintiffs fail to allege scienter, but that defendants cannot be held liable for omitting information that they could not have known at the time. *See, e.g., Panther Partners, Inc. v. Ikanos Comm'ns, Inc.,* 538 F. Supp. 2d 662, 670 (S.D.N.Y. 2008) ("Defendants are not expected to know the un-knowable, nor are they expected to disclose it."), *aff'd,* 2009 WL 2959883 (2d Cir. Sept. 17, 2009).

[7] The Court's recent decision in *Dynex* is fully consistent with this analysis.  In that case, the Court denied dismissal where plaintiffs' allegations were supported by actual facts (based on specific information received from nine confidential witnesses and contained in particular internal reports), but dismissed claims based on conclusory allegations like those made against defendants here. 2009 WL 3380621 at *8-15.

that the accuracy of these statements must be judged at the time of the offering, not based on

subsequent events. *Pollio v. MF Global, Ltd.*, 608 F. Supp. 2d 564, 571 (S.D.N.Y. 2009).[8]

### D.    Plaintiffs Fail to Allege Material Misrepresentations or Omissions Regarding Credit Support

Plaintiffs do not dispute that the offering materials did not guarantee that credit

enhancement would be "sufficient." And they fail to refute defendants' argument that the

offering materials specifically disclosed the possibility that credit support may prove inadequate.

(RALI Brief at 22; RALI Opp. at 22-23.) Both arguments are fatal to plaintiffs' claims.[9]

### E.    Plaintiffs Fail to Allege Loan-to-Value Ratios Were Misstated

Plaintiffs essentially concede that they do not allege any facts in support of their

conclusory allegation that the loan-to-value ratios were inaccurate or that those purported

inaccuracies were material, and instead argue this defect is not fatal because plaintiffs need not

"*prove* their claims at this stage in the litigation." (RALI Opp. at 23 (emphasis added).)

Although plaintiffs are correct that they need not present *evidence* to survive dismissal, plaintiffs

acknowledge as they must that they are required to set forth in their complaint *factual allegations*

to state a claim in the first instance (RALI Opp. at 7 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1397,

1949 (2009))), which is precisely what they fail to do here.[10]

---

[8] In addition, the prospectus supplements specifically cautioned that delinquency rates had not only "increased in [then] recent months" but "may continue to increase" following the offering. (RALI Brief at 22 (quoting Ex. D, S-21; Ex. E, S-17).) Although plaintiffs deny that this explicit warning disclosed the very risk about which they complain (RALI Opp. at 22), they offer no explanation as to why.

[9] Plaintiffs nonetheless try to sidestep these grounds for dismissal by claiming that the offering materials should have disclosed the fact that the models on which credit enhancements were based were outdated. (RALI Opp. at 22-23.) These allegations fail to state a claim for all the reasons set forth in Section III.A *supra*.

[10] With regard to Point V of the RALI Defendants' opening brief, plaintiffs essentially refuse to point to any statements made by defendants Residential Capital or Residential Funding, let alone misstatements for which they should be held liable. (RALI Opp. at 24.) Nor do plaintiffs even identify which claims they purported to assert against these entities. For all of the reasons explained in defendants' moving brief (RALI Brief at 24), Residential Capital and Residential Funding should therefore be dismissed from this action.

Dated: October 30, 2009

SHEARMAN & STERLING LLP

By:     /s/ Richard F. Schwed

Stuart J. Baskin
sbaskin@shearman.com
Richard F. Schwed
rschwed@shearman.com
Christopher R. Fenton
christopher.fenton@shearman.com
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

*Attorneys for the RALI Defendants*